COMMONWEALTH *vs.* SIDNEY A. WOLBARST.

Middlesex.   January 7, 1946. — March 6, 1946.

Present: QUA, DOLAN, RONAN, & WILKINS, JJ.

*Municipal Corporations,* By-laws and ordinances.   *Gaming.*

Section 21 (1) of G. L. c. 40 does not give a city power to enact an ordinance directed to the suppression of gambling by prohibiting the maintenance of specified devices in places to which the public may resort.

COMPLAINT, received and sworn to in the Third District Court of Eastern Middlesex on May 2, 1945.

On appeal to the Superior Court, the case was heard by *Leary,* J., without a jury.

*G. A. McLaughlin,* for the defendant.

*E. Martin,* Assistant District Attorney, for the Commonwealth.

RONAN, J.   The defendant has been found guilty, after a trial by a judge without a jury, of violating an ordinance of Cambridge which prohibits any person from having in his possession and control in any restaurant, public hall, store, place of amusement or any other place to which the public may resort, or installing or permitting to be installed in any such place, a pin ball machine, "marble games, diggers, grab machines, baseball or football machine games, target machines, horse racing machines, or any other device by whatever name such device may from time to time be known which by the insertion of any coin, slug or token sets in motion mechanism by which any game or amuse-

ment may be played or by which any coins, tokens or other articles of value, or anything which may directly or indirectly be exchanged or converted into any coin or article of value is received by or returned to the person playing or manipulating such device." All that appears from the statement of agreed facts upon which the case was submitted to the trial judge is that the said ordinance was in force and effect; that the defendant had in his possession and control at a place of public amusement maintained by him in Cambridge two pin ball machines which were played by members of the public; and that these machines do not return to the player any coin or any article of value.

The ordinance expressly covers a wide variety of contrivances. The maintenance of one or more of those specifically named for the actual operation of them by members of the public who pay a price in exchange for an opportunity to secure by chance or hazard a prize from the device constitutes the setting up of a lottery for money or merchandise in violation of G. L. (Ter. Ed.) c. 271, § 7, and the keeping in a place occupied by one of such a device for the purpose of playing at an unlawful game for money or other thing of value is prohibited by G. L. (Ter. Ed.) c. 271, § 5. *Commonwealth* v. *McClintock*, 257 Mass. 431. *Commonwealth* v. *Ward*, 281 Mass. 119. *Commonwealth* v. *Plissner*, 295 Mass. 457. *Commonwealth* v. *Lake*, 317 Mass. 264. Apart from the devices named, the ordinance includes not only those where the insertion of a coin sets in motion mechanism by which a game or amusement may be played but also those which, after the mechanism is set in motion by the insertion of a coin, give out a coin or some article of value to the one "manipulating" it. Unless "manipulating" denotes the ability of the one using the device to control or in some way affect the particular manner in which the mechanism should operate after it is set in motion, the term might be held to apply to the operation of an ordinary vending machine where, after a coin is inserted, it is necessary to push in a rod, turn a lever or perform some other similar act before the article is released by the machine. Such a machine operates uniformly. The operator

cannot change or vary its method of operation. The defendant is not charged with the possession of a vending machine, and we need not decide, if he were, whether such a machine would come within the sweep of the ordinance. See *McCaughn* v. *American Meter Co.* 67 Fed. (2d) 148; *State* v. *Fairbanks,* 65 S. D. 272. Compare *Nelson* v. *State,* 37 Okla. Crim. 90.

The validity of the ordinance is challenged on the ground that the city was without power to enact it. The Commonwealth does not contend that the Legislature has expressly delegated any power to the city to prevent gambling, see *Commonwealth* v. *Goodnow,* 117 Mass. 114; *Burlington* v. *Dunn,* 318 Mass. 216; its sole contention is that such power was conferred by G. L. (Ter. Ed.) c. 40, § 21 (1). This section authorizes towns (including cities, c. 40, § 1; c. 4, § 7, Thirty-fourth) to make by-laws (including ordinances, c. 4, § 7, Twenty-second) "For directing and managing their prudential affairs, preserving peace and good order, and maintaining their internal police." This section does not transfer to a city or town all the police power of the Commonwealth or such portions of it as a municipality might desire to exercise, but the grant is limited to the regulation and prohibition of such matters as are of an inherently local nature, peculiarly affecting the public welfare of the particular community and so closely connected with the administration of local government as to become properly a part of it. Many instances of the subjects, the control and supervision of which have been given to cities and towns by § 21 (1), are set forth in *Commonwealth* v. *Kimball,* 299 Mass. 353, 356–358. The majority of these instances concern the regulation of the use of the public ways. The Legislature has expressly conferred authority upon cities and towns to regulate by ordinances or by-laws various matters pertaining to the use of the public ways. See, for example, G. L. (Ter. Ed.) c. 40, § 21 (16), as inserted by St. 1941, c. 346, § 1; G. L. (Ter. Ed.) c. 85, §§ 5, 10. But even as to public ways, the powers delegated to cities and towns by § 21 (1) are not unlimited. *Commonwealth* v. *Morrison,* 197 Mass. 199. *Commonwealth* v. *Surridge,* 265 Mass. 425. *Common-*

*wealth* v. *Pascone*, 308 Mass. 591. If the ordinance prohibited gaming or the playing of games on the streets in order to provide unobstructed passage for travellers, a different question would be presented. This ordinance has no such aim and object. It is unrelated to the use of the public ways.

The suppression of gambling lies within the domain of the police power of the Commonwealth, and the exercise of this power, which began nearly three centuries ago, has been governed by statutes of State wide application. A mention of a few of these statutes will suffice to show the adoption by the Legislature of a policy of dealing itself with this evil rather than of delegating any authority to the cities and towns to suppress it. Colonial Laws, 57, § 2, prohibited one from bowling, using a shuffleboard or playing any game in a house of common entertainment. Penalties were imposed upon the one in charge of the house and also upon the player. All persons were prohibited from playing with cards or dice or any "game for any money or money worth." The preamble of St. 1719–20, c. 8, condemning lotteries as common and public nuisances and imposing heavy penalties for setting up and promoting them, declared that the existence of lotteries tends to the impoverishment of the people, constitutes a reproach to the government, and is "against the common good, trade, welfare and peace of the province." Statute 1732–33, c. 14, §§ 2, 3, further prohibited the setting up of lotteries. Gambling was prohibited further by St. 1785–86, c. 58, which provided that notes, bonds and mortgages given in payment of gambling debts should be void; losers were given a remedy to recover their losses; winners of sums exceeding twenty shillings were subject to a forfeiture of double the amount won and were barred from holding public office for a certain period; and persons were prohibited from playing with cards or dice or at billiards or with any other implement used in gaming in any tavern or house of entertainment or from exposing to public view any such articles in such places. The legislative policy of recognizing gambling as a State wide problem and dealing with it on that basis appears from the preamble of St.

1785-86, c. 58, which stated that "the practice of gaming for money or other property is not only injurious in a high degree to the individuals concerned therein, but also in its tendency, ruinous and destructive to the State." Statute 1798, c. 20, prohibited the keeping of a billiard table at an inn or tavern, while St. 1800, c. 57, prohibited anyone from engaging in or promoting a lottery or selling tickets for a lottery which was not authorized by a law of the Commonwealth or by an act of Congress. By St. 1832, c. 166, § 11, an innholder or common victualler was prohibited from keeping any dice, cards, bowls, billiards, quoits, or other implements used in gambling or from permitting them to be used upon his premises under a penalty. A penalty was also provided for one playing with any of these articles at an inn or tavern. These various statutes, together with others dealing with gambling, were codified in the Revised Statutes and appear in cc. 47 and 50. The penalty upon an innholder or common victualler for keeping a billiard table was increased by St. 1845, c. 211. An amendment to the gambling statutes, which is important to the question presented in the instant case, was effected by St. 1853, c. 399, which provided that the possession by an innholder or by any other person and the use by any person of cards, billiards, bowls, quoits and other similar implements for amusement only, or for any purpose other than for gaming for money, should not be deemed to be unlawful, "any thing in the forty-seventh and fiftieth chapters of the Revised Statutes, to the contrary notwithstanding." The words "unless the same are used on the Lord's day" were added to this amendment by St. 1854, c. 450. The statutes prohibiting gaming (except those prohibiting places resorted to for gaming which have been classified with other public nuisances in the revision of our statutes) were codified in c. 85 in the revision of the General Statutes and have in all subsequent revisions been included in a single chapter. See now G. L. (Ter. Ed.) c. 271. Where, as here, the Legislature has enacted a complete and comprehensive statutory system designed to eliminate the evil of gambling, there is no room for ordinances or by-laws. It could hardly have been in-

tended by the Legislature in enacting what is now G. L. (Ter. Ed.) c. 40, § 21 (1),[1] to change its long established policy of dealing with gambling on a State wide basis and to delegate any such authority to cities and towns. We hold that no such power was conferred by said § 21 (1). *Commonwealth* v. *Turner*, 1 Cush. 493. *Cox* v. *Segee*, 206 Mass. 380. *Greene* v. *Mayor of Fitchburg*, 219 Mass. 121. *Southborough* v. *Boston & Worcester Street Railway*, 250 Mass. 234, 239. *North Reading* v. *Drinkwater*, 309 Mass. 200.

We need not discuss the other objections to the ordinance. The case is distinguishable from *Commonwealth* v. *Baronas*, 285 Mass. 321. The by-law in that case was not directed toward the regulation in general of a subject matter already covered by the statutes concerning intoxicating liquors, but was directed toward the maintenance of public order in the municipality in a manner that this court deemed reasonable. The dominant purpose of the instant ordinance is the suppression of gambling. The by-law in the case cited was not repugnant to any statute, while the ordinance in question seeks to make criminal conduct here complained of which has by statute been declared lawful since St. 1853, c. 399. See now G. L. (Ter. Ed.) c. 271, § 3.

*Exceptions sustained.*

---

[1] This section originated in Col. Laws, 147, which authorized towns to pass by-laws not of a criminal but of a prudential nature. The provision in reference to the maintenance of the internal police of a town was added by St. 1847, c. 166.