JOSEPH W. BROWN *vs.* TOWN OF CARLISLE

Middlesex.    May 7, 1957. — June 3, 1957.

Present: WILKINS, C.J., RONAN, WILLIAMS, WHITTEMORE, & CUTTER, JJ.

*Municipal Corporations,* By-laws and ordinances.  *Firearms.  Hunter. Real Property,* Discharge of firearms.

A town by-law providing that "No person shall fire or discharge any firearms . . . on any private property, except with the consent of the owner or legal occupant thereof" was authorized by the provision of G. L. (Ter. Ed.) c. 40, § 21, that towns may make by-laws for the purpose of "preserving peace and good order" and was valid.

BILL IN EQUITY, filed in the Superior Court on June 21, 1955.

The suit was reported by *Good, J.*

*Alfred W. Howes,* for the plaintiff.

*David B. Williams,* Town Counsel, for the defendant.

WILKINS, C.J.   This bill for a declaratory decree as to the validity of a part of a by-law of the defendant town is

reported without decision upon a case stated. G. L. (Ter. Ed.) c. 214, § 31. The plaintiff, a resident of the town of Natick, and the holder of a hunting license issued by its town clerk, desires to hunt wild game and to discharge firearms on private property in the defendant town without first obtaining the consent of an owner or legal occupant.

A controversy exists between the plaintiff and the defendant town as to the validity of the portion in supplied italics of Article VIII of its by-laws which reads: "No person shall fire or discharge any firearms or explosives of any kind within the limits of any highway, park or other public property except with the permission of the board of selectmen; *or on any private property, except with the consent of the owner or legal occupant thereof;* provided, however, that this by-law shall not apply to the lawful defense of life or property nor to any law enforcement officer acting in the discharge of his duties. . . ."

The question is whether the by-law is authorized by that part of G. L. (Ter. Ed.) c. 40, § 21, which reads: "Towns may, for the purposes hereinafter named, make such orders and by-laws, not repugnant to law, as they may judge most conducive to their welfare, which shall be binding upon all inhabitants thereof and all persons within their limits. . . . (1) For directing and managing their prudential affairs, preserving peace and good order, and maintaining their internal police."

Every presumption is to be indulged in favor of the validity by a by-law. *Concord* v. *Attorney General, ante,* 17, 25, and cases cited. We think that it is not an unreasonable method of preserving peace and good order in the town of Carlisle to prohibit the discharge of firearms on private property without the consent of the owner or occupant. Not only would this provision tend to prevent breaches of the peace arising out of controversies between owners and occupants on the one hand and armed trespassers on the other, but it would tend to minimize the risk of injury to persons and damage to property by preventing such conduct without the knowledge of the owners or occupants. It

just is not true that the discharge of firearms on private property is no more safe with the owner's or legal occupant's consent than without it. It is a misconception of the by-law and its obvious purpose to assert that permitting such conduct with such consent is a concession that the discharge of firearms in and of itself does not disturb the peace, or is not dangerous to property, or is not unsafe. Be it noted that this is not a restriction upon the right of a person to use his own property. The restriction is upon the use of another's property without his consent. The plaintiff's hunting license issued in a neighboring town is no guaranty of safety. The many accidental shootings which occur during a hunting season are a matter of common knowledge, and give cogent proof that something more than a hunting license is required for the protection of human life.

The objections made by the plaintiff do not impress us as substantial. We have considered them all and we mention those which most deserve discussion. It is not correct as a general proposition to say that the authority of a town under G. L. (Ter. Ed.) c. 40, § 21, is limited to "a matter which municipalities have had the right to regulate as a result of many years of custom and usage by all municipalities similarly situated." This argument would have us ignore all growth, all progress, all development inevitable with the passing of years. The contention that such "by-laws must have been sanctioned from early colonial times by long usage and independent of statute" is disposed of by the definition of the phrase, "prudential concerns of a town," given by Chief Justice Shaw in *Willard* v. *Newburyport*, 12 Pick. 227, 231, where it was said that "it embraces that large class of miscellaneous subjects affecting the accommodation and convenience of the inhabitants, which have been placed under the municipal jurisdiction of towns, by statute or by usage." In the case at bar the by-law is upheld not as dealing with the town's prudential affairs, but as "preserving peace and good order" equally clearly in the doing of which a municipality is not to be restricted solely to the methods customary in colonial days.

The plaintiff contends that the by-law "is repugnant to the general law because the Legislature has retained to itself the power to regulate and control the discharge of firearms." *Gile* v. *Perkins,* 207 Mass. 172, 174. *Southborough* v. *Boston & Worcester Street Railway,* 250 Mass. 234, 239. *Commonwealth* v. *Wolbarst,* 319 Mass. 291, 295–296. We are referred to various sections of G. L. (Ter. Ed.) c. 131, as appearing in St. 1941, c. 599, § 2, entitled "Powers and duties of the division of fisheries and game." Section 5 relates to the licensing of hunters, trappers, and fishermen. Section 6 allows, "Subject to existing laws," license holders to hunt birds and mammals. Section 85 provides: "Whoever, for the purpose of hunting, taking or killing any bird or mammal, discharges any firearm upon any state or paved highway, or within fifty yards of any such highway, or whoever hunts any bird or mammal within five hundred feet of any dwelling in use, except as authorized by the owner or occupant thereof, shall be punished by a fine . . . ." Statute 1951, c. 353, entitled "An Act relative to the use of firearms," inserts new sections § 85A and § 85B, respectively imposing penalties for bodily injury and for damage to property caused by negligent use of firearms, and § 85C prescribing that hunters in the deer season shall wear red.

We are also referred to two sections in G. L. (Ter. Ed.) c. 266, entitled "Crimes against property." Section 120 provides penalties for one who without right enters or remains upon "improved or enclosed land" after having been forbidden to do so. Section 121 provides: "Whoever, without right, enters upon the land of another with firearms, with intent to fire or discharge them thereon, and, having been requested by the owner or occupant of such land or by his agent to leave such land, remains thereon, shall be punished . . . ."

The enumeration of these statutes demonstrates that the State has not excluded the type of legislation here undertaken by the defendant town. There is no inconsistency between the statutes and the by-law. See *Commonwealth* v. *Davis,* 140 Mass. 485, 486; *Commonwealth* v. *Hubley,* 172

Mass. 58, 59–60; *Commonwealth* v. *Baronas*, 285 Mass. 321, 323; *Milton* v. *Donnelly*, 306 Mass. 451, 458; *Druzik* v. *Board of Health of Haverhill*, 324 Mass. 129, 136.

Holders of licenses may hunt "Subject to existing laws." If the State sees fit to prohibit hunting, with or without the discharge of firearms, within five hundred feet of a dwelling in use without the authorization of the owner or occupant, a town may, without inconsistency, regulate the discharge of firearms within a greater distance of a dwelling, whether in use or not, or on any private property without the prescribed consent. If a statute makes it a crime to enter or remain on improved or enclosed lands after being forbidden to do so, or to enter upon land with firearms, with intent to discharge them, and to remain after a request to leave, a town may, without inconsistency, regulate the entry upon any land, whether or not improved or enclosed, and regardless of any previous forbidding of entry or subsequent request to leave.

The by-law is not invalid because of the penalty imposed by G. L. (Ter. Ed.) c. 131, § 100, as appearing in St. 1941, c. 599, § 2, for fishing or hunting on posted land.

We are not confronted with an attempt to regulate hunting, although enforcement of the by-law in the interests of local safety may interfere with trespassing while hunting. In *Hopewell* v. *Gruchowski*, 29 N. J. Super. 605, an ordinance, which was expressly aimed in part at hunting, was declared void as a regulation of the taking of game, which was a subject in the exclusive control of the State. In so far as that case turns upon New Jersey statutes, it is distinguishable. If it goes beyond this, we do not adopt it.

A final decree is to be entered declaring that the by-law is valid with respect to the words, "or on any private property, except with the consent of the owner or legal occupant thereof."

*So ordered.*