HARRY ATHERTON & others *vs*. SELECTMEN OF BOURNE & another.

Barnstable. February 6, 1958. — April 4, 1958.

Present: WILKINS, C.J., SPALDING, WILLIAMS, COUNIHAN, & CUTTER, JJ.

*Zoning. Mandamus. Building Inspector. Permit. Municipal Corporations*, Judicial power over municipality, By-laws and ordinances. *Jurisdiction*, Justiciable question. *Words*, "Order or decision."

The question whether a by-law adopted by a town is within the authority conferred on the town by the enabling statute is a matter to be decided by the courts. [255–256]

An amendment of a town's zoning by-law placing in an unrestricted classification a few acres of the land on a point at the shore previously wholly in a residential classification was invalid as "spot zoning"

where the reclassified area was of the same character as the rest of the point and with the rest formed "a homogeneous unit for [residential] zoning purposes." [256–257]

A mere withdrawal by a town's building inspector of a "stop work" order, previously posted on premises to suspend commercial building construction thereon, by physically removing the order from the premises or by orally informing the landowner that it was no longer in effect did not constitute an "order or decision" of the inspector from which an aggrieved neighbor could appeal to the town's board of appeals under G. L. c. 40A, § 13, as appearing in St. 1955, c. 325, § 1, and the neighbor was not barred on the ground of availability of another remedy from attacking by mandamus the validity of a zoning by-law amendment the adoption of which brought about the withdrawal of the "stop work" order. [258–259]

PETITION for a writ of mandamus filed in the Superior Court on December 18, 1956.

The case was heard by *Quirico, J.*, by whose order judgment dismissing the petition was entered. The petitioners appealed.

*Allan M. Hale & John O. Parker,* for the petitioners.

*Frederick J. Smith,* for the respondents.

WILKINS, C.J.  In *Atherton v. Board of Appeals of Bourne,* 334 Mass. 451, this court annulled a decision of the board of appeals, which had granted a variance from the zoning by-law to one Bigelow. The variance was one permitting him to construct on a parcel in a residence district on Phinney's Point in Bourne certain buildings for the conduct of a business of building, repairing, and storing boats. Work had begun on a building, but when the variance was annulled on July 20, 1956, the respondent building inspector of Bourne ordered Bigelow to stop work. When work stopped, the concrete foundation and the first floor were completed, but not the walls and roof. Bigelow then took steps to insert in the warrant for a special town meeting an article to amend the zoning by-law to reclassify his land and three parcels to the north and three parcels to the south from a residence district into a general use district. On September 17, 1956, the amendment was passed. After it became effective, following approval by the Attorney General and advertising, the respondent building inspector in-

formed Bigelow that the "stop work order" was no longer in effect.[1] Construction was resumed. No new building permit was issued.

This petition for a writ of mandamus is by three owners of the rezoned land and by an owner of land across a private road from the Bigelow parcel. They seek an order that the respondent board and building inspector enforce the zoning by-law as it stood before the purported amendment of September 17, 1956, and terminate the use of the premises for the storing, building, repairing, and servicing of boats or for any other industrial or commercial purpose not permitted in a residence district. The case was heard by a judge, who made a lengthy statement of the material facts found by him, from which, except as otherwise indicated, we have taken the facts herein stated. The judge ruled that the amendment was invalid, but that the petitioners' remedy was by appeal under G. L. (Ter. Ed.) c. 40A, § 13, as appearing in St. 1955, c. 325, § 1. The petition was dismissed, and the petitioners appealed.

The town adopted the zoning by-law on August 2, 1949. There are two classifications: residence districts and general use districts. The latter is really no classification, for in such districts "no restriction or regulation is imposed . . . upon the use made of buildings, structures or premises." The uses permitted in a residence district are: single family dwellings; the conduct of a business, profession, or art by the occupant of the dwelling on the same premises with no merchandise or materials visible to the passing public; certain very limited home industries conducted by resident occupants with no merchandise or materials visible to the passing public; agricultural uses, including roadside stands for the sale of products of the land; boarders and lodgers with a resident family; certain nonprofit patriotic, fraternal and other organizations and clubs; religious uses; telephone exchanges; hospitals; town buildings; and certain limited accessory uses and small signs.

---

[1] The testimony shows that this was done apparently by removing a previously posted stop work order.

Phinney's Point is bounded on the east by the tracks of the New York, New Haven and Hartford Railroad and on the west by Buzzards Bay. It is separated from the rest of the town by the tracks and is reached only by a narrow road, twelve to fifteen feet wide, which crosses the tracks. "Phinney's Point is a homogeneous unit for zoning purposes. Indeed, it would be difficult to conceive of one that was more so." *Atherton* v. *Board of Appeals of Bourne*, 334 Mass. 451, 454.

By the zoning by-law in its original form all of Phinney's Point was classified as a general use district. By an amendment of February 12, 1951, the point was reclassified as a residence district, and all of it so remained until the passage of the disputed amendment of September 17, 1956.

The Bigelow parcel contains "more than one acre," but the size of the other six parcels does not appear in the judge's findings or in the reported evidence.[1] The three parcels north of the Bigelow land are (1) land of Theresa M. Reinhardt, on which is a single family summer cottage; (2) land of the petitioner Lawson and his wife on which is a substantial single family summer dwelling; and (3) vacant land of the town covered by some growth of trees. The three parcels south of the Bigelow land are (1) vacant land of the petitioner Alden fronting on the water and used by her in connection with a single family summer dwelling located several lots distant; (2) vacant land of John E. and Lillian F. Reinhardt; and (3) land of the petitioner Jose Fernandes and his wife on which is a barn or other building accessory to a very substantial single family residence located on a lot separated by a private road.

The building constructed by Bigelow has a frontage of about ninety feet facing the water, and is about sixty-five feet wide. It is one story high with side walls of corrugated metal and a roof which is substantially flat. It is visible from parts of the premises of the petitioners and of other persons. There is a metal rail track on a trestle from the

---

[1] There was a suggestion in the court below by respondents' counsel of "About six acres. Six or seven acres."

water across the beach to the building for use in moving boats to the building.

No part of Phinney's Point except the Bigelow boat yard has ever been used for other than residential purposes. The boat yard is for the storing, repairing, and building of boats up to fifty feet in length. It will involve the operation of whatever tools and machinery may be necessary to carry on the business; the storage of materials in the building and about the premises; and the presence of boats in the water in front of the premises in varying numbers for varying periods of time. The number of persons employed will vary with the volume of business. Traffic will be substantially greater than for residential use. There will be vehicles of employees and customers and commercial vehicles transporting materials and boats to and from the premises. These must pass over the narrow, private railroad crossing, and, there being no public ways, will reach the boat yard over a narrow private road used in common by all residents and visitors. The boat yard building is the only one constructed on the point in the last twenty years. There has been no change in the physical characteristics or in the use of property except that some houses formerly occupied only in summer may be occupied the entire year.

In his findings the judge quoted from G. L. (Ter. Ed.) c. 40A, § 2, inserted by St. 1954, c. 368, § 2: "Due regard shall be paid to the characteristics of the different parts of the city or town, and the zoning regulations in any city or town shall be the same for zones, districts or streets having substantially the same character." He then made these findings. The amendment does not comply with this requirement. In its enactment "no regard was had to the characteristics of the different parts of the town." The only area considered was that which the amendment sought to reclassify. That area is of substantially the same character as the remainder of Phinney's Point which was not reclassified. It is also of the same character as much other waterfront land in the town which is classified as a residence district. The amendment attempts to single out a small

tract of land for different treatment from that accorded to similar surrounding land indistinguishable from it in character, all for the economic benefit of Bigelow.

The judge also quoted from c. 40A, § 3, inserted by St. 1954, c. 368, § 2: "Zoning regulations and restrictions shall be designed among other purposes to . . . conserve the value of land and buildings; to encourage the most appropriate use of land throughout the city or town . . .." He then made these findings. The amendment will not conserve the value of land and buildings, but instead will result in a lessening of the value of land and buildings both in the area which it purports to reclassify and Phinney's Point generally. The presence of a tract of land without zoning restrictions as to use will operate as a deterrent to persons who might otherwise desire to purchase property on Phinney's Point. The most appropriate use of the land on the point is for residential purposes and not for commercial or industrial purposes. If the amendment had been confined to the Bigelow land, the result might have been "spot zoning." This conclusion would follow from the fact of singling out a small tract for different treatment from that accorded land indistinguishable from it in character. The conclusion would also be supported by reason of the small area sought to be reclassified. The proponents appear to have anticipated a charge of "spot zoning," and to have enlarged the area to include three lots on each side of the Bigelow lot. These additional six owners did not seek reclassification, and there is no evidence that they desire it. Three of these owners are petitioners. The amendment would be no less "spot zoning" by the inclusion of the additional six lots than it would be without them.

The respondents seem to make the astonishing contention that the town's vote in enacting the by-law is a judicially unreviewable act. The argument, if made, overlooks the elementary principle that a town is merely a subordinate agency of State government created for convenient administration and has only those powers which are expressly conferred by statute or necessarily implied from those ex-

pressly conferred or from undoubted municipal rights or privileges. *County of Essex* v. *Newburyport,* 254 Mass. 232, 237. *White* v. *Treasurer of Wayland,* 273 Mass. 468, 470. *MacRae* v. *Selectmen of Concord,* 296 Mass. 394, 396. *Adie* v. *Mayor of Holyoke,* 303 Mass. 295, 298–299. *Burnham* v. *Mayor & Aldermen of Beverly,* 309 Mass. 388, 389. *Commonwealth* v. *Hudson,* 315 Mass. 335, 344, 346. Examples where an ordinance or by-law has been held invalid because enacted in excess of the authority conferred by the enabling act are numerous. *Newton* v. *Belger,* 143 Mass. 598. *Winthrop* v. *New England Chocolate Co.* 180 Mass. 464. *Commonwealth* v. *Maletsky,* 203 Mass. 241. *Commonwealth* v. *Hayden,* 211 Mass. 296. *Goldstein* v. *Conner,* 212 Mass. 57. *Cawley* v. *Northern Waste Co.* 239 Mass. 540, 544. *Whittemore* v. *Town Clerk of Falmouth,* 299 Mass. 64. *Tranfaglia* v. *Building Commissioner of Winchester,* 306 Mass. 495, 497. *Leahy* v. *Inspector of Buildings of New Bedford,* 308 Mass. 128, 131. *North Reading* v. *Drinkwater,* 309 Mass. 200. *Whittemore* v. *Building Inspector of Falmouth,* 313 Mass. 248. *Pittsfield* v. *Oleksak,* 313 Mass. 553, 556. *Smith* v. *Board of Appeals of Salem,* 313 Mass. 622. *Commonwealth* v. *Wolbarst,* 319 Mass. 291. *Smith* v. *Board of Appeals of Fall River,* 319 Mass. 341, 343–344. *Caires* v. *Building Commissioner of Hingham,* 323 Mass. 589, 594. *122 Main Street Corp.* v. *Brockton,* 323 Mass. 646, 648. *Barney & Carey Co.* v. *Milton,* 324 Mass. 440, 449. *Caputo* v. *Board of Appeals of Somerville,* 331 Mass. 547, 549. *New England Telephone & Telegraph Co.* v. *Brockton,* 332 Mass. 662, 665. *Planning Board of Reading* v. *Board of Appeals of Reading,* 333 Mass. 657, 660. *Colabufalo* v. *Board of Appeal of Newton,* 336 Mass. 213, 215.

We are of opinion that there was no error in the judge's conclusion that the amendment of September 17, 1956, was in excess of the power conferred by the enabling act and hence was invalid. *Whittemore* v. *Building Inspector of Falmouth,* 313 Mass. 248, 249. *Smith* v. *Board of Appeals of Salem,* 313 Mass. 622. *Caputo* v. *Board of Appeals of Somerville,* 331 Mass. 547, 549. See *Leahy* v. *Inspector of*

*Buildings of New Bedford,* 308 Mass. 128, 134; *Marblehead*
v. *Rosenthal,* 316 Mass. 124, 126; *McHugh* v. *Board of
Zoning Adjustment of Boston,* 336 Mass. 682, 688–689.

We turn to the procedural question. The pertinent por-
tion of the statute which the judge ruled was the appropriate
remedy reads: "*An appeal to the board of appeals* established
under section fourteen *may be taken* by any person aggrieved
by reason of his inability to obtain a permit from any ad-
ministrative official under the provisions of this chapter, or
by any officer or board of the city or town, or *by any person,
aggrieved by any order or decision of the inspector of buildings*
or other administrative official *in violation of any provision
of this chapter, or any ordinance or by-law adopted thereunder*"
(emphasis supplied). G. L. (Ter. Ed.) c. 40A, § 13, as ap-
pearing in St. 1955, c. 325, § 1.

The grounds of the decision below were that (1) mandamus
is an extraordinary remedy, and will not lie if another and
effectual remedy is available, *Parrotta* v. *Hederson,* 315 Mass.
416, 420; and (2) where a statute, such as c. 40A, is seem-
ingly intended to cover a whole subject and contains a
remedy for violations, other remedies are superseded. *School
Committee of Lowell* v. *Mayor of Lowell,* 265 Mass. 353, 355–
356. *Boyle* v. *Building Inspector of Malden,* 327 Mass. 564,
566–567. *Howe* v. *Ware,* 330 Mass. 487, 488.

The judge pointed out that mandamus has been a remedy
resorted to by petitioners in similar cases, and cited the
more recent cases. *Petros* v. *Superintendent of Buildings of
Lynn,* 306 Mass. 368. *Tranfaglia* v. *Building Commissioner
of Winchester,* 306 Mass. 495. *Leahy* v. *Inspector of Build-
ings of New Bedford,* 308 Mass. 128. *Whittemore* v. *Building
Inspector of Falmouth,* 313 Mass. 248. *Caires* v. *Building
Commissioner of Hingham,* 323 Mass. 589. *Lamarre* v. *Com-
missioner of Public Works of Fall River,* 324 Mass. 542.
*Sunderland* v. *Building Inspector of North Andover,* 328 Mass.
638. *Raymond* v. *Commissioner of Public Works of Lowell,*
333 Mass. 410. See *Tranfaglia* v. *Board of Appeals of Win-
chester,* 306 Mass. 619. These cases were all begun before

the effective date of St. 1955, c. 325, § 1, and any alternate remedy would have to be found in a predecessor statute. These were: (1) G. L. (Ter. Ed.) c. 40, § 30, as appearing in St. 1933, c. 269, § 1, and amended by St. 1935, c. 388, §§ 1, 2, under which only applicants for a permit, and not adjacent landowners, were "person[s] aggrieved" entitled to appeal to the board of appeals; or (2) § 30, as so appearing and so amended, as supplemented by the permissive provision in the sixth paragraph of § 30, as appearing in St. 1941, c. 198, § 1, empowering a municipality to enact an ordinance or by-law conferring such a right of appeal upon adjacent landowners. See, for example, the *Petros* case (page 369) and the *Boyle* case (pages 566–567).

By the enactment of c. 40A, § 13, as appearing in St. 1955, c. 325, § 1, the petitioners acquired a right of appeal to the board of appeals such as might have been conferred by by-law, but in Bourne in fact had not been conferred. It is the extent of that right of appeal which we must determine. The petitioners are undoubtedly persons aggrieved. The question is whether they are persons "aggrieved by any order or decision of the inspector of buildings." On this aspect of the case the trial judge stated: "In the present state of the facts, it is possible that the petitioners may have a right of appeal from the 'order or decision' of the respondent building inspector in informing Bigelow that the previous 'stop work order,' so called, was no longer in effect after the adoption of the amendment. By reason of the availability of that remedy, the petitioners do not appear to be entitled to the extraordinary remedy of mandamus."

We do not agree. It is our opinion that there was no "order or decision" of the building inspector within the meaning of the statute from which the petitioners could appeal. The building inspector testified, and we find, that the only building permit to Bigelow was issued by the board of selectmen before the office of building inspector was created, and before he assumed office on March 1, 1956. The only act which the building inspector performed after the amendment of September 17 was at some time in No-

vember to remove the stop order. We do not pause to inquire whether the building permit of an earlier date and issued by the respondent board pursuant to the invalid variance was a nullity or was capable of being revived in some manner by the respondent building inspector. The time for taking appeals is not unlimited. "A zoning ordinance or by-law may prescribe a reasonable time within which appeals under this section may be taken." G. L. (Ter. Ed.) c. 40A, § 13, as appearing in St. 1955, c. 325, § 1. We have not been informed of any by-law enacted in Bourne taking advantage of this authority for prescribing a reasonable time. The physical removal of a stop work order from the premises or a mere oral communication by the building inspector to the owner would be nothing which the petitioners could be expected promptly to discover. This observation would be particularly true as to summer residents in November. Manifestly, the legislative intention could not have been to found a right of appeal to the board of appeals upon the possibility of a fortuitous discovery that work might have been resumed on the building.

We do not reach certain questions, argued by the petitioners, that the board of appeals has not been given, or could not rightly be given, the right to pass upon the validity of by-laws. See *Losick* v. *Binda,* 102 N. J. L. 157; *H. Krumgold & Sons, Inc.* v. *Mayor & Aldermen of Jersey City,* 102 N. J. L. 170, 175; *Builders' Realty Corp.* v. *Bigelow,* 102 N. J. L. 433; *Dowsey* v. *Kensington,* 257 N. Y. 221, 227–228; *Baddour* v. *Long Beach,* 279 N. Y. 167, 177; *Melita* v. *Nolan,* 126 Misc. (N. Y.) 345 (Sup. Ct.); *State* v. *Gurda,* 209 Wis. 63, 67–68.

As there was no "order or decision" from which the petitioners could appeal, it was their right to bring this petition for a writ of mandamus.

The judgment is reversed. Judgment is to be entered in the Superior Court in accordance with the prayers of the petition. The petitioners are to have costs.

*So ordered.*