BOSTON POLICE PATROLMEN'S ASSOCIATION, INCORPORATED
& another[1] vs. CITY OF BOSTON & another.[2]

Suffolk.   February 4, 1975. — April 9, 1975.

Present: TAURO, C.J., REARDON, QUIRICO, BRAUCHER, & HENNESSEY, JJ.

*Police.   Civil Service.   Municipal Corporations*, Police.   *Constitu-
tional Law*, Equal protection of laws, Public employment.   *Public
Employment.   Boston.   Words*, "Partisan political activity."

St. 1962, c. 322, § 1 empowered the Boston police commissioner to
promulgate a rule requiring members of the police department
seeking elective governmental office to take a leave of absence
without pay during a campaign for office.   [371-372]
A rule, duly promulgated by the Boston police commissioner requiring
members of the police department seeking elective governmental
office to take a leave of absence without pay during the campaign,
which, applied to a policeman who sought election as a municipal
councillor, resulted in suspension without pay and loss of other
economic benefits and status, did not conflict with G. L. c. 31,
§ 46E, providing that holders of elective State office and certain
mayors who hold permanent civil service positions or are publicly
employed on a permanent basis shall be granted upon request
leaves of absence without pay and without loss of status for their
term of office and may not be suspended or discharged, because
the policeman did not hold an elective State office nor was he a
mayor.   [372-373]
A rule duly promulgated by the Boston police commissioner which re-
quired members of the police department seeking elective govern-
mental office to take a leave of absence without pay during the
campaign, as applied to a policeman seeking such office who was
suspended for violating the rule did not deny the policeman equal
protection of the laws under the Fourteenth Amendment to the

---

[1] James M. Corbett.

[2] Edmund L. McNamara, then commissioner of the police depart-
ment of the city of Boston.

United States Constitution, nor did it improperly restrict his free-
dom of association under the First Amendment to the United
States Constitution.  [373-375]
A rule, requiring members of the Boston police department seeking
elective governmental office to take a leave of absence during the
campaign, which was promulgated by the police commissioner
after a policeman sought such office and which, after a hearing at
which it was determined that the policeman had violated the
rule after its promulgation, was applied to that policeman, result-
ing in suspension without pay and loss of other economic bene-
fits and status, had not been applied retroactively and, as applied,
the rule did not deny the policeman due process of law under the
Fourteenth Amendment to the United States Constitution.  [375]

BILL IN EQUITY filed in the Superior Court on July 9,
1971.

The suit was heard by *Hallisey*, J.

After review was sought in the Appeals Court, the
Supreme Judicial Court, on its own initiative, ordered
direct appellate review.

*Marilyn L. Sticklor*, Assistant Corporation Counsel, for
the city of Boston & another.

*Henry Wise* for the Boston Police Patrolmen's Associa-
tion, Incorporated, & another.

BRAUCHER, J.  In June, 1971, a Boston policeman
became a candidate for the office of city councillor.  On
July 2, 1971, the police commissioner adopted a rule that
a member of the police department, on becoming a
candidate for elective office, must take a leave of absence
without pay.  The policeman and an association of
which he is a member challenged the validity of the rule,
and a judge of the Superior Court held that it was unen-
forceable because contrary to G. L. c. 31, § 46E.  We
hold that the rule is valid and enforceable.

This case was consolidated for hearing in the Superior
Court with *O'Hara* v. *Commissioner of Pub. Safety*,
*post*, 376 (1975), and was heard on a statement of agreed
facts amounting to a case stated, which we summarize.
The plaintiff association is the collective bargaining repre-
sentative of Boston patrolmen, and the individual

plaintiff Corbett is a Boston patrolman. On June 16, 1971, Corbett subscribed his candidacy and applied for nomination papers as a candidate for the office of city councillor in the city of Boston. On June 29, 1971, he received nomination papers for that office for the preliminary election to be held September 14, 1971.

On July 2, 1971, the commissioner issued General Order No. 351, amending the Rules and Regulations of the police department of the city of Boston by inserting Rule 34, § 4 (f).[3] Before issuing the order, he knew that Corbett was running for the office of city councillor. On July 26, 1971, Corbett was certified by the election commission as a candidate for city councillor. By letter dated July 26, 1971, he was charged by the commissioner with violation of Rule 34, § 4 (f). After a hearing on August 11, 1971, he was found guilty of a violation of the rule and was suspended without pay from August 16, 1971, until failure of nomination or withdrawal of candidacy. He survived the preliminary election, but failed of election at the final election held November 2, 1971, and was thereupon reinstated as patrolman. Meanwhile, he had lost salary, other economic benefits and status.

The plaintiffs sued for declaratory and injunctive relief. The judge found that Corbett was a member of a quasi military organization, subject to strict discipline, hazardous duty and call to action at all hours, with correlative powers of interrogation and arrest of citizens. The commissioner could reasonably infer that permitting him to remain on duty while compaigning for elective office

---

[3] "(f) Every member of the police department, upon becoming a candidate for election to any office under the federal, state or city government, shall take a leave of absence without pay effective with the day he requests nomination papers or subscribes his statement of candidacy and continuing until whichever of the following first occurs: the election or his failure of nomination at the primary or preliminary election or his failure to become, or withdrawal as, a candidate for nomination."

could create a conflict of interest which could impede his efficient performance of his duty and could undermine and impair the integrity and discipline of the law enforcement agency. For example, he might be reluctant to interrogate fully, to arrest, or otherwise to enforce the law against a citizen who might have the power to affect substantially the outcome of the campaign. The judge cited for comparison G. L. c. 268A, § 25. He ruled that St. 1906, c. 291, § 11, as appearing in St. 1962, c. 322, § 1,[4] apparently gave the commissioner authority to promulgate the rule, but that the rule was unenforceable because contrary to the second paragraph of G. L. c. 31, § 46E, inserted by St. 1965, c. 703, § 1.[5] A final decree was entered declaring that the rule was unenforceable against Corbett and that Corbett should be reinstated without loss of benefits. The defendants appealed, and the case was transferred from the Appeals Court to this court under G. L. c. 211A, § 10 (A).

1. *Application of the rule.* Apart from the question whether the rule conflicts with the statute, discussed below, we agree with the judge that the authority granted to the commissioner is broad enough to cover the challenged rule as one "needful . . . for the efficiency of said police." St. 1906, c. 291, § 11, as appearing in St. 1962, c. 322, § 1. Limitations on the political

---

[4] "The police commissioner . . . shall make all needful rules and regulations for the efficiency of said police . . .."

[5] "Any person holding an elective state office, or the mayor of any city elected to said office by the people, who holds a permanent office or position in the classified civil service or the labor service or who is employed on a permanent basis by any public authority which is supported in whole or in part by public money shall, upon his written request, made to the appointing authority, be granted a leave of absence without pay from such office, position or employment for all or such portion of the term for which he was elected as he may at any time, or from time to time, designate, and he shall not be suspended or discharged, and shall suffer no loss of civil service rights, as a result of such election."

activites of policemen are not at all novel. Such a limitation gave rise to Mr. Justice Holmes's famous aphorism: "The petitioner may have a constitutional right to talk politics, but he has no constitutional right to be a policeman." *McAuliffe* v. *Mayor & Aldermen of New Bedford,* 155 Mass. 216, 220 (1892). See *Milton* v. *Civil Serv. Commn.* 365 Mass. 368, 372-373 (1974). Cf. *Murgia* v. *Commonwealth of Mass. Bd. of Retirement,* 376 F. Supp. 753, 754 (D. Mass. 1974).

The rule could not literally be applied to Corbett "upon becoming a candidate," since he became a candidate before the rule was promulgated. The rule had no retroactive application, but it obviously contemplated a leave of absence "continuing until . . . election . . . failure of nomination . . . or . . . withdrawal. . . ." There can be here no claim of unfair suddenness or surprise. The rule was promulgated on July 2, 1971; on July 16, 1971, Corbett refused to comply. On July 26, 1971, Corbett was certified as a candidate, and by letter dated July 26, 1971, he was charged with violation of the rule. After a hearing on August 11, 1971, the commissioner suspended him without pay, effective August 16, 1971. Thus no question is presented of suspension before notice and hearing. We think the application of the rule was proper.

2. *Conflict with statute.* The plaintiffs contend, and the judge ruled, that the rule is contrary to G. L. c. 31, § 46E, since the rule is more restrictive than the statute. The mere existence of statutory provision for some matters possibly within the purview of the rule does not render the rule invalid as repugnant to law. Cf. *Commonwealth* v. *Baronas,* 285 Mass. 321, 323 (1934); *Druzik* v. *Board of Health of Haverhill,* 324 Mass. 129, 135-136 (1949); *Brown* v. *Carlisle,* 336 Mass. 147, 150 (1957). The Legislature did not by G. L. c. 31, § 46E, deal comprehensively with the subject of political activities of members of the civil service, nor did it explicitly

limit action on that subject by cities and towns except with respect to persons holding certain elective offices. Cf. *Bloom* v. *Worcester,* 363 Mass. 136, 152-157 (1973). The rule does not forbid what the statute permits nor permit what the statute forbids. In this situation it is our task, to the extent possible, to construe the rule and the statute to constitute a harmonious whole consistent with the legislative purposes disclosed, and to give reasonable effect to both. See *Ryan* v. *Marlborough,* 318 Mass. 610, 613 (1945); *Chief of Police of Dracut* v. *Dracut,* 357 Mass. 492, 499 (1970); *Chief of Police of Westford* v. *Westford,* 365 Mass. 526, 529-532 (1974).

The statute does not apply to the present case for two reasons. First, Corbett was a candidate for office rather than a "person holding" an office. Second, a city councillor does not hold "an elective state office" and is not "the mayor of any city." We do not think the statute establishes any policy whatever for holders of local offices other than mayor, nor for candidates for such offices. We save for another day the question whether there is disharmony between the statutory policy for holders of certain offices and the policy of the rule as it might affect a candidate for one of those offices. As the rule applies to the present case, it is unaffected by the statute, and the judge was in error in ruling to the contrary.

3. *Constitutional issues.* The plaintiffs argue that the rule violates the equal protection clause of the Fourteenth Amendment to the United States Constitution, abridges the freedom of association protected by the First Amendment, and deprives him of liberty or property without due process of law. The defendants reply that such arguments are not open in the absence of a cross appeal. It seems to us, however, that it is open to the plaintiffs to defend the decree that Corbett should be reinstated on any grounds that were presented in the Superior Court. In the view we take of the constitutional questions argued, we prefer to rest our decision on the merits of those questions.

For the present purpose, the rule, promulgated under a grant of authority from the Legislature, stands on the same footing as would a statute, ordinance, or by-law. *Druzik* v. *Board of Health of Haverhill, supra,* at 138. It is a rule of the police department, not an attempt to regulate the rights and duties of private citizens. Contrast *Wyeth* v. *Board of Health of Cambridge,* 200 Mass. 474, 480 (1909). So far as it is contended that there is a denial of equal protection of the laws because the rule does not extend beyond the police department, the contention borders on the frivolous. *Lecci* v. *Looney,* 33 App. Div. 2d (N. Y.) 916 (1970). See *Broadrick* v. *Oklahoma,* 413 U. S. 601, 607 n. 5 (1973); *Mancuso* v. *Taft,* 476 F. 2d 187, 190 (1st Cir. 1973). We have no doubt that the rule bears a reasonable relation to the policeman's job, even though it also involves his exercise of a constitutional right. See *Milton* v. *Civil Serv. Commn.* 365 Mass. 368, 373 (1974); *Selectmen of Framingham* v. *Civil Serv. Commn.* 366 Mass. 547, 555 (1974).

More substantial is the claim that the rule impairs the policeman's freedom of association in violation of the First Amendment. The answer is that the Supreme Court of the United States has ruled against the plaintiffs' contentions. *United Pub. Wrks. of America (C.I.O.)* v. *Mitchell,* 330 U. S. 75 (1947). *United States Civil Serv. Commn.* v. *National Assn. of Letter Carriers, AFL-CIO,* 413 U. S. 548 (1973). *Broadrick* v. *Oklahoma,* 413 U. S. 601 (1973). *Swinney* v. *Untreiner,* 272 So. 2d 805, 809-810 (Fla. 1973), cert. den. 413 U. S. 921 (1973). Cf. *Commonwealth ex rel. Specter* v. *Moak,* 452 Pa. 482, 491-493 (1973). They recognize the difficulty, and rely on the "wisdom" of lower court judges and dissenting Justices in those cases. We, of course, are not empowered to review decisions of the Supreme Court of the United States. The plaintiffs also argue that the Federal decisions apply only to "partisan political activity." *Broadrick* v. *Oklahoma, supra,* at 617-618.

Ballots in Boston municipal elections do not carry party designations. St. 1948, c. 452, § 63, as appearing in St. 1951, c. 376, § 2. Without denying the importance of the difference between partisan and nonpartisan elections, we think it clear that decision whether the distinction should be drawn is an appropriate matter for legislative or administrative rather than judicial determination. *Mortillaro* v. *Louisiana,* 356 F. Supp. 521, 534 (E. D. La. 1972). *Johnson* v. *State Civ. Serv. Dept.* 280 Minn. 61, 67 (1968). See *Mancuso* v. *Taft, supra,* at 199-200. Cf. *Elder* v. *Rampton,* 360 F. Supp. 559, 562-564 (D. Utah 1972), aff'd 413 U. S. 902 (1973).

The plaintiffs' due process claim relates to their assertion that the rule was retroactive in its application to Corbett. We have dealt with this question above. There is also a suggestion that the rule was part of a personal vendetta of the commissioner against Corbett. That suggestion fails for want of proof as well as for insufficiency in law.

4. *Disposition.* The final decree is reversed. A judgment is to be entered declaring that Rule 34, § 4 (f), of the Rules and Regulations of the police department of the city of Boston, as applied to Corbett, is consistent with G. L. c. 31, § 46E, and is valid and enforceable against Corbett, and that he is not entitled to compensation for the period of his suspension.

*So ordered.*