Town of Amherst *vs.* Attorney General.

Suffolk. October 9, 1986. — December 15, 1986.

Present: Hennessey, C.J., Liacos, Abrams, Nolan, & Lynch, JJ.

*Municipal Corporations*, By-laws and ordinances, Home rule, Police power. *Attorney General. Constitutional Law*, Home Rule Amendment. *Firearms.*

Statement of legal principles guiding the Attorney General in the exercise of his limited power under G. L. c. 40, § 32, to disapprove by-laws adopted by a town. [795-797]
On the basis of the reasons given by the Attorney General in disapproving a town's by-law which would have prohibited, with certain exceptions, the discharge of firearms within the town limits, this court concluded that the Attorney General had exceeded his limited power under G. L. c. 40, § 32. [797-799]

Civil action commenced in the Supreme Judicial Court for the county of Suffolk on May 19, 1982.

The case was reported by *Wilkins*, J.

*Robert W. Ritchie*, Town Counsel (*Alan Seewald & Robert Troxell* with him) for the plaintiff.

*Joan C. Stoddard*, Assistant Attorney General, for the defendant.

Abrams, J. The Attorney General disapproved a by-law adopted by the town of Amherst (town).[1] The by-law would

[1] The Attorney General acted pursuant to G. L. c. 40, § 32 (1984 ed.), which provides in part: "Except to the extent that a zoning by-law may take effect as provided in section five of chapter forty A, before a by-law takes effect it shall be approved by the attorney general or ninety days shall have elapsed without action by the attorney general after the clerk of the town in which a by-law has been adopted has submitted to the attorney general a certified copy of such by-law with a request for its approval, a statement clearly explaining the proposed by-law, including maps and plans if necessary, and adequate proof that all of the procedural requirements for the adoption of such by-law have been complied with. . . . If the attorney general disapprove[s] a by-law he shall give notice to the town clerk of

prohibit with some limitation the discharge of certain firearms within town limits. The town filed a civil action in the nature of certiorari[2] in the Supreme Judicial Court for the county of Suffolk. After hearing, a single justice reserved and reported the case without decision. Essentially, the town complains that the Attorney General exceeded his authority and usurped the municipal legislative power in his disapproval of the by-law. We agree.

The case is before us on a statement of agreed facts which are summarized as follows. On October 19, 1981, town meeting members, at an adjourned session of the town's special town meeting, voted, under art. 52 of the warrant, to adopt a by-law prohibiting the discharge of certain firearms, with limited exceptions. We set out the by-law in the margin.[3] Pursuant to G. L. c. 40, § 32 (1984 ed.), the town clerk forwarded an attested copy of the vote under art. 52 to the Attorney General.

the town in which the by-law was adopted of his disapproval, with his reasons therefor."

[2] General Laws c. 249, § 4 (1984 ed.), establishes that " [a] civil action in the nature of certiorari to correct errors in proceedings which are not according to the course of the common law, which proceedings are not otherwise reviewable by motion or by appeal, may be brought in the supreme judicial or superior court."

[3] The by-law adopted by the town provides: "No person shall fire or discharge any gun, fowling piece or other firearm in the Town of Amherst; but to the extent not otherwise prohibited by law, the provisions of this section shall not apply to (A) the discharge of shotguns or air-guns, or (B) the discharge of firearms

1. in the lawful defense of the person, or
2. for the humane dispatch of injured animals, or
3. by any person lawfully on a target, trap or skeet range established for such purposes, or
4. by any duly authorized peace officer acting in the proper performance of duty, or
5. by any duly authorized military personnel participating in scheduled military exercises, or
6. by any person using blank cartridges in theatrical performances or sporting events, or
7. by an owner or tenant of land (or if authorized by either, any member of the immediate family or person permanently employed by such owner or tenant) but only upon such land and for the limited purposes of

On February 12, 1982, the Attorney General disapproved the by-law.[4] In a letter accompanying the disapproval, the Attorney General, acting through an assistant attorney general, explained that the by-law would bar any person issued a hunting license in Massachusetts from exercising that license by means of any gun, fowling piece, or other firearm. The assistant attorney general further explained that " [i]f duplicated in other communities [Article 52] would deprive the Commonwealth of its control over the hunting of wild and stocked animals and game by firearms for the common welfare." The letter concluded by reasoning that, while "[r]estrictions on the discharge of firearms may be reasonable in densely populated urban areas[, i]n rural areas where hunting is a traditional pursuit serious justification for restrictions would be required."

The town claims that the by-law is consistent with both State and local law and that the Attorney General exceeded his authority by ruling that it is not. In contrast to the Attorney General's broad general power to prosecute actions which he believes are in the interest of the Commonwealth, *Feeney* v. *Commonwealth*, 373 Mass. 359 (1977), the Attorney General's power to disapprove town by-laws is limited. The Attorney General may disapprove a by-law only if it violates State substantive or procedural law. See *Concord* v. *Attorney Gen.*, 336 Mass. 17, 24 (1957).

The Attorney General is guided in the exercise of his limited power of disapproval by the same principles that guide us. See *Concord* v. *Attorney Gen., supra* at 24-25. It is fundamental that every presumption is to be made in favor of the validity

a) shooting a bird or other animal found to be damaging or posing the imminent threat of damage to the property of such person or persons, and
b) shooting domestic animals raised as livestock.

There shall be a penalty for breach hereof not exceeding $300. for each offense."

[4] The record is unclear as to the date on which the town clerk submitted the by-law to the Attorney General for approval. The town has not suggested that the Attorney General failed to act within the ninety days allowed by c. 40, § 32. We therefore consider the issues raised.

of municipal by-laws. See *Grace* v. *Brookline,* 379 Mass. 43, 49 (1979). See also *Crall* v. *Leominster,* 362 Mass. 95, 101-102 (1972); *Brown* v. *Carlisle,* 336 Mass. 147, 148 (1957). The Massachusetts Constitution reaffirms the "customary and traditional liberties of the people with respect to the conduct of their local government . . . ." Art. 2, § 1, of the Amendments to the Constitution of Massachusetts (Home Rule Amendment), as amended by art. 89. In the exercise of this right to local government, towns have the power to pass by-laws for the purpose of preserving peace and order. G. L. c. 40, § 21 (1984 ed.).[5] The town exceeds its power only when it passes a by-law inconsistent with the Constitution or laws of the Commonwealth. See Home Rule Amendment, § 6. G. L. c. 43B, § 13 (1984 ed.) (Home Rule Procedures Act).[6] See *Marshfield Family Skateland, Inc.* v. *Marshfield,* 389 Mass. 436, 440-441, appeal dismissed, 464 U.S. 987 (1983). To determine whether a by-law is inconsistent with any general law within the meaning of § 6 of the Home Rule Amendment and § 13 of the Home

---

[5] General Laws c. 40, § 21 (1984 ed.), provides in part: "Towns may, for the purposes hereinafter named, make such ordinances and by-laws, not repugnant to law, as they may judge most conducive to their welfare, which shall be binding upon all inhabitants thereof and all persons within their limits. . . . (1) *Prudential Affairs and Internal Police.* — For directing and managing their prudential affairs, preserving peace and good order, and maintaining their internal police."

[6] The Home Rule Amendment, § 6, provides: "Any city or town may, by the adoption, amendment, or repeal of local ordinances or by-laws, exercise any power or function which the general court has power to confer upon it, which is not inconsistent with the constitution or laws enacted by the general court in conformity with powers reserved to the general court by section eight, and which is not denied, either expressly or by clear implication, to the city or town by its charter. This section shall apply to every city and town, whether or not it has adopted a charter pursuant to section three." See § 7 as to limitations on local powers.

General Laws c. 43B, § 13 (1984 ed.), provides in part: "Any city or town may, by the adoption, amendment or repeal of local ordinances or by-laws, exercise any power or function which the general court has power to confer upon it, which is not inconsistent with the constitution or laws enacted by the general court in conformity with powers reserved to the general court by Section 8 of Article LXXXIX [amending art. 2] of the Amendments to the Constitution and which is not denied, either expressly or by clear implication, to the city or town by its charter."

Rule Procedures Act, the Attorney General must apply the same process of ascertaining legislative intent as that applied by this court in Federal preemption cases and in our cases involving inconsistent local ordinances. "The legislative intent to preclude local action must be clear." *Bloom* v. *Worcester*, 363 Mass. 136, 155 (1973). If such intent is not clear, that intent may be inferred if legislation deals with a subject comprehensively. *Id.*

A local enactment must prevent the achievement of a clearly identifiable purpose of State legislation in order to be struck down as inconsistent with that State legislation. *Wendell* v. *Attorney Gen.*, 394 Mass. 518, 524 (1985). Merely "[t]he existence of legislation on a subject . . . is not necessarily a bar to the enactment of local ordinances and by-laws exercising powers or functions with respect to the same subject. If the State legislative purpose can be achieved in the face of a local ordinance or by-law on the same subject, the local ordinance or by-law is not inconsistent with the State legislation." *Bloom* v. *Worcester, supra* at 156.

The Attorney General asserts that the by-law before us is inconsistent with and preempted by State statutes regarding hunting. See G. L. c. 131 (1984 ed.). The Attorney General does not point to any section of G. L. c. 131 which is inconsistent with the by-law. Indeed, the Attorney General has approved similar by-laws in twenty-eight localities.[7] Chapter 131 outlines, as the Attorney General notes, carefully guarded conditions by which one may hunt in the Commonwealth safely, provisions by which one is licensed, and provisions designed to preserve and maintain the wildlife and natural resources of the Commonwealth. While hunting is permissible in this Com-

---

[7] As of 1979, the division of fisheries and wildlife compiled the following list of municipalities with by-laws or ordinances prohibiting the discharge of firearms: Arlington, Ashland, Belmont, Boston, Brookline, Burlington, Canton, Chelsea, Lowell, Lynn, Lynnfield, Malden, Medford, Melrose, Natick, Newton, North Reading, Norwood, Randolph, Revere, Salem, Somerset, Somerville, Stoneham, Swampscott, Winchester, Winthrop, and Woburn. Forty-nine cities and towns have by-laws or ordinances requiring hunters to obtain written permission from landowners or town authorities. Twenty-six other cities and towns have special restrictions on firearms.

monwealth, there is no indication in c. 131 that a municipality cannot prohibit the use of firearms. Some of c. 131's guidelines do concern the safe use of certain firearms, see, e.g., §§ 58, 60-64, 66-70, but the Amherst by-law in no way frustrates those sections. "The mere existence of statutory provision for some matters within the purview of the by-law will not render [the by-law] invalid as repugnant to law." *Commonwealth* v. *Baronas*, 285 Mass. 321, 323 (1934). See *John Donnelly & Sons* v. *Outdoor Advertising Bd.*, 369 Mass. 206, 212 (1975); *Boston Police Patrolmen's Ass'n* v. *Boston*, 367 Mass. 368, 372 (1975).[8]

As we read the letter explaining the Attorney General's disapproval, he based his decision on his assumption[9] that Amherst is a rural town and that, as a rural town, it cannot restrict the discharge of firearms. The General Court, of course, may make a distinction between urban and rural communities, but it has not done so in c. 131. The Attorney General is not free to make a distinction which the Legislature has not made. It is for the Legislature, not the executive branch, to determine legislative policy. See *Opinion of the Justices*, 375 Mass. 827, 833 (1978); *Concord* v. *Attorney Gen., supra* at 24. The Attor-

---

[8] We also have concluded that prohibition of commercial operation of coin-activated amusement devices, passed in the face of a State statute allowing the operation of such devices, is valid, as is a prohibition of self-service gas stations, passed in the face of a Board of Fire Prevention Regulations rule allowing self-service stations. *Marshfield Family Skateland, Inc.* v. *Marshfield*, 389 Mass. 436, 440-441 (1983). *Milton* v. *Attorney Gen.*, 372 Mass. 694 (1977).

[9] Amherst is the largest town in Hampshire County. Its population of 33,229 (as reflected in the 1980 census) resides within 27.75 square miles. Its average population density is 1,197.44 persons per square mile. Within the town's boundaries are the University of Massachusetts, Amherst College, and Hampshire College. Neither this court nor the Attorney General may conclude if those demographic statistics classify the town as urban or rural. The town suggests that the Attorney General classified Amherst as "rural" because "[w]ith exceptions for cities such as Springfield and Pittsfield, it is tempting [for those in eastern Massachusetts] to lump the western part of the Commonwealth together under the general classification of 'rural.'" The record does not disclose whether towns such as Ashland, Burlington, Canton, Lynnfield, and Somerset are more or less rural than the town of Amherst.

ney General must "be faithful to the words of the statute . . . as written, and an event or contingency for which no provision has been made does not justify judicial [or Attorney General] legislation." *Massachusetts Bay Transp. Auth.* v. *Massachusetts Bay Transp. Auth. Retirement Bd.*, 397 Mass. 734, 740 (1986). Neither we nor the Attorney General may comment on the wisdom of the town's by-law. *American Mfrs. Mut. Ins. Co.* v. *Commissioner of Ins.*, 374 Mass. 181, 189 (1978).

Because the only reasons we may consider in examining the validity of the Attorney General's disapproval of a by-law are those included in his letter of disaproval, see *Concord* v. *Attorney Gen.*, 336 Mass. 17, 21 (1957), the Attorney General's disapproval of the town's by-law is quashed and judgment shall enter declaring that the by-law was lawfully adopted.

*So ordered.*