### COMMONWEALTH *vs.* CHARLES A. NEWHALL.

Suffolk. · January 18, 1910. — February 28, 1910.

Present: KNOWLTON, C. J., HAMMOND, BRALEY, SHELDON, & RUGG, JJ.

*Automobile. Statute,* Construction. *Way,* Public. *Street Commissioners.*

Review by HAMMOND, J., of statutes regarding the operation of automobiles in this Commonwealth.

A statute, which relates only to the regulation of the operation of motor vehicles in this Commonwealth, contains a provision, " No ordinance, by-law or regulation now in force in any city or town or in any park or parkway which regulates the speed at which motor vehicles shall run upon its ways, or which excludes such vehicles therefrom or which governs or restricts the use of such vehicles shall hereafter have any force or effect." Previous to the enactment of the statute, an elaborate code of regulations had been adopted by the street commissioners of the city of Boston under the authority of an act of the Legislature which made no reference to motor vehicles. If the statute were held to have made of no effect the regulations of the street commissioners. the result would be to allow to those operating motor vehicles the use of the streets of Boston without observance of the code and thus to impair and probably eventually substantially to destroy the efficiency of the code. *Held,* that before the statute could be given such effect, the intent of the Legislature therefor must be shown plainly by the language of the statute interpreted in the light of the circumstances at the time it was passed and of the history of the legislation of which it formed a part.

In St. 1909, c. 534, relating to the operation of motor vehicles, that part of § 17, which provides that " No ordinance, by-law or regulation now in force in any city or town or in any park or parkway which regulates the speed at

which motor vehicles shall be run upon its ways or which excludes such vehicles therefrom or which governs or restricts the use of such vehicles shall hereafter have any force or effect," was intended by the Legislature to refer only to those regulations which theretofore had been made under St. 1903, c. 473, and St. 1905, c. 366, referring to the same subject, and was not intended to refer to or to affect a code of "street traffic regulations and rules for driving" which previously had been established by the street commissioners of the city of Boston as to all vehicles on its public streets under the authority given to them by St. 1908, c. 447, to "pass ordinances, by-laws or regulations relative to street traffic, or to the movement, stopping or standing of vehicles," and "to pass, and to amend or change from time to time, all regulations for such purpose, not inconsistent with law, which they shall deem needful to prevent the congestion and delay of traffic, and for other purposes"; and therefore those of such rules which are not inconsistent with the statute remain in force as to motor vehicles as well as to other vehicles therein described.

HAMMOND, J. The defendant has been found guilty of leaving an automobile "standing for more than twenty minutes in a certain public street" called Court Square, in the city of Boston, in violation of a rule and regulation of the board of street commissioners of that city. We do not understand the defendant to contend that the rule was not valid when made by the street commissioners. His contention is that it was rendered void and of no effect by virtue of St. 1909, c. 534, § 17. The only question is whether that contention is sound. If it is, then the exceptions should be sustained; otherwise they should be overruled.

Soon after the general appearance of automobiles upon the public ways of the Commonwealth it became apparent that by reason of their great speed danger was likely to arise from their unskilful or reckless operation, and the Legislature began to act. It first limited the rate of speed, especially when approaching crossings of ways, and prescribed certain precautions to be exercised by persons operating an automobile when approaching other vehicles. St. 1902, c. 315. But this statute, so narrow in scope, does not seem to have been satisfactory, and the next year it was repealed and a new statute enacted. This second act (St. 1903, c. 473) was entitled "An Act to provide for registering automobiles and motor cycles, and for licensing operators thereof." It provided for the registration of all such vehicles, and for licensing operators thereof, and, with some changes not material here, re-enacted the provisions of the first statute as to speed and precautions. It further provided

that every such vehicle should have a brake, bell or other means of signalling, and a light. Section 14 contained the following language : " Boards of aldermen of cities and the selectmen of towns may make special regulations as to the speed of automobiles and motor cycles, and as to the use of such vehicles upon particular roads or ways, including the right to exclude them altogether therefrom. Such exclusion, however, shall be subject to an appeal to the Massachusetts highway commission, whose decision in the case shall be final." This is the first statute expressly giving to aldermen and selectmen power to make regulations as to automobiles as such. Subsequently statutes were passed making various changes in the law. St. 1905, c. 311, and c. 366. The statute last cited re-enacted, with some modifications as to speed only, the provision giving to local authorities power to make special regulations as to the speed of automobiles and motor cycles, and as to the use of such vehicles on particular roads and ways, including their complete exclusion therefrom, and contained the following clause : " No ordinance, by-law or regulation now in force in any city or town which regulates the speed at which automobiles or motor vehicles shall be run upon its public ways shall hereafter have any force or effect." The purpose of this statute appears to have been to wipe out all regulations as to speed then in force which had been made by the local authorities under St. 1903, c. 473, as amended, and to allow such authorities to begin anew upon that subject under different conditions. Various changes were made from time to time by the Legislature. See St. 1906, cc. 353, 412; St. 1907, cc. 203, 408, 494, 580; St. 1908, cc. 642, 648. But the power given to the local boards to make regulations as to automobiles by St. 1903, c. 473, § 14, and St. 1905, c. 366, still remained in 1908, although the conditions under which the power was to become effective were somewhat changed. At first this power seems to have been quite unrestricted, so far as respects approval by any other board or officer, as to the speed of the automobile, although restricted as to its exclusion. St. 1903, c. 473, § 14. Afterwards the power both as to speed and exclusion was subject under certain conditions to the approval of the Massachusetts highway commission. St. 1905, c. 366, and St. 1906, c. 412.

In 1908, the Legislature, thinking that the laws as to automobiles and motor cycles should be codified, directed the highway commission, with the assistance of the Attorney General, to perform the work and report to the then next Legislature. Res. 1908, c. 127. The resolve called for a complete consolidation and arrangement of the laws of the Commonwealth relating to those vehicles, so that the same might be "concise, plain and intelligible."

This commission made their report to the Legislature of 1909, and thereafter St. 1909, c. 534, was passed. At the time this statute was passed there was in force a code of "street traffic regulations and rules for driving" which had been established by the street commissioners of the city of Boston under the authority given to them by St. 1908, c. 447, to "pass ordinances, by-laws or regulations relative to street traffic, or to the movement, stopping or standing of vehicles," and to prescribe certain penalties for the violation thereof, with the further authority "to pass, and to amend or change from time to time, all regulations for such purpose, not inconsistent with law, which they shall deem needful to prevent the congestion and delay of traffic, and for other purposes." The code is voluminous. It prescribes elaborate rules as to the moving of vehicles, as to signals to be given by the drivers thereof to give notice of their intended movements, as to the right of way for vehicles belonging to the police or fire department, or for mail wagons or ambulances, as to the speed of vehicles especially when approaching a crossing of intersecting streets, as to the stopping, standing or turning of vehicles, with a special rule as to certain streets therein particularly specified, as to receiving and delivering passengers or merchandise, as to care in driving and as to the rights and duties of pedestrians. It further names several very crowded streets in which during certain busy hours vehicles shall pass only one way, and also streets in which during certain hours there shall be no delivery of the class of articles therein especially named, and no "backing up of vehicles to the curb or the collection of garbage." It contains over fifty sections, some of which are very comprehensive, distributed under twelve heads called articles. In a word it forms a complicated and extensive system of rules for the regulation of vehicles in order that the streets

may be free from undue congestion, and be more convenient for the public travel. This code has been established by the public officers to whom the power and duty was delegated by the Legislature; and in the absence of any evidence to the contrary it must be assumed to be reasonably necessary for the purpose for which it was intended, namely, to relieve congestion of the streets and promote the convenience of the public travel. It nowhere contains any rule specially applicable to automobiles or motor cycles, but all vehicles are included under the general name of vehicle. Such is a brief description of the code of rules in force in Boston at the time of the passage of St. 1909, c. 534.

The defendant contends that so far as respects automobiles and motor cycles the whole code was invalidated by this statute; that it was the intention of the Legislature to relieve automobiles and motor cycles from the scope of these rules; that accordingly an automobile, which is one of the most bulky vehicles upon the streets, may go either way on a "one way" street; may turn on any street the driver chooses notwithstanding the prohibition as to other vehicles, although it may require much more room than most vehicles in which to turn; and that it may stand in the street as long as it pleases, subject only to the general law of creating a nuisance in the street. In a word, the contention is that the automobilist, so far as this code is concerned, may run rampant upon the crowded streets of the large city of Boston. It is easy to see that if this contention is true, the efficiency of the code so far as it attempts to relieve the congestion of the crowded streets will be greatly impaired if not substantially destroyed. Such a conclusion as to the intent of the Legislature is not to be reached unless plainly shown by the language of the statute interpreted in the light of the circumstances at the time it was passed, and of the history of the legislation of which it forms a part.

The section of St. 1909, c. 534, in which the repeal of the code so far as it affects automobiles is supposed to be found, is the seventeenth. After providing that the local authorities may make special regulations as to the speed of motor vehicles, and as to the use of such vehicles upon public ways, and may exclude such vehicles altogether from certain ways, every such

regulation not to be valid until advertised as therein required, nor until approved by the highway commission, the section proceeds thus: " No ordinance, by-law or regulation now in force in any city or town or in any park or parkway which regulates the speed at which motor vehicles shall be run upon its ways or which excludes such vehicles therefrom or which governs or restricts the use of such vehicles shall hereafter have any force or effect," with an exception in favor of the regulations in force on the island of Nantucket and those made by the Metropolitan Park Commission.    This is not the first time a provision like this in principle has appeared.    There was one in St. 1905, c. 366: and as, when by that statute the Legislature changed the conditions under which the regulations of the local authorities should become valid, and provided that no ordinance, by-law or regulation then in force as to speed should have any effect, it referred only to those regulations which had been made under St. 1903, c. 473, (the only statute which up to that time had been passed expressly authorizing the local authorities to act in the matter,) so, when in § 17 of the St. of 1909 it again changed the conditions under which these regulations of the local authorities should become valid and used the language above quoted upon which the defendant relies, it in like manner referred only to those regulations which theretofore had been made under St. 1903, c. 473, and St. 1905, c. 366, and the amendments thereof. The Legislature was dealing in this section with the subject of regulations made and to be made by the local authorities under the special legislation as to motor vehicles, and the purpose of the section was to wipe out what had been done by the local authorities under such special legislation and to begin again under somewhat different conditions.    It refers in no way to any rule and regulation not so made or to be made, and has no bearing on the question whether the street regulations made by the street commissioners under St. 1908, c. 447, are now in force.    So far as respects the rules of the Metropolitan Park Commission, it simply continues the exemption which appears in all the previous legislation.    Sts. 1903, c. 473, § 14; 1905, c. 366, § 1; 1906, c. 353, § 4; c. 412, § 9.

It does not necessarily follow, however, that the street commissioners can control motor vehicles as if St. 1909, c. 534, had

not been passed. The power of the Legislature is superior to the power of the street commissioners. The apparent purpose of the St. of 1909 is to simplify and unify, in certain respects, the regulations with reference to the operation of motor vehicles and the licensing of drivers. Wherever the statute has prescribed rules as to such matters it must prevail; and any rule of the street commissioners which is inconsistent with the statute must be held to be invalid. But the ground upon which such rule must be held to be invalid is, not that it was repealed by the repealing clause above named, but that it is inconsistent with some rule expressly or by fair implication laid down by the statute.

Upon looking into the statute there does not appear to be any provision regulating the time during which an automobile may be left standing in the street. The regulation of the street commissioners is not therefore inconsistent with the statute, and it must be held to be valid.

*Exceptions overruled.*

The case was submitted on briefs.

*W. A. Thibodeau & G. L. Ellsworth*, for the defendant.

*T. D. Lavelle*, Assistant District Attorney, for the Commonwealth.