COMMONWEALTH *vs.* EDWARD L. DOBBINS.

Berkshire.    March 5, 1962. — May 4, 1962.

Present: WILKINS, C.J., WHITTEMORE, CUTTER, KIRK, & SPIEGEL, JJ.

*Way,* Parking. *Motor Vehicle,* Parking. *Municipal Corporations,* By-laws
    and ordinances. *Constitutional Law,* Police power, Parking. *Words,*
    "All night parking."

G. L. c. 40, § 22, as amended, empowering municipalities to regulate "car-
    riages and vehicles used therein," authorizes municipalities to regulate
    parking of motor vehicles on ways, and such authority was not affected
    by St. 1956, c. 509, adding cl. 21 in c. 40, § 21, empowering municipali-
    ties to enact by-laws or ordinances "For prohibiting or regulating the
    parking of any motor vehicle in front of any dwelling house except by
    the occupants of said dwelling house, provided that notice of said pro-
    hibition or regulation is given by the use of portable or permanent
    signs."    [273–275]
A city ordinance providing "It shall be unlawful for the operator of a
    vehicle to park such vehicle at any time . . . on the improved or paved
    surface of any street after eleven o'clock P.M. for the purpose of all
    night parking" was not shown to be unconstitutional as an unreasonable
    exercise of the police power or on the ground that the phrase "all night
    parking" was too vague and indefinite to be enforced.    [275]

COMPLAINT received and sworn to in the District Court of
Central Berkshire on August 11, 1959.

Upon appeal to the Superior Court the case was heard by
*Cahill,* J.

*Edward L. Dobbins,* pro se, submitted a brief.

*Leonard E. Gibbons,* Assistant District Attorney, for the
Commonwealth.

WILKINS, C.J.    The defendant appeals from a conviction
in the Superior Court on a complaint that on July 24, 1959,
he "did park a motor vehicle on Bartlett Avenue, after
11 P.M. for the purpose of all night parking" in violation of
Pittsfield Revised Ordinances (1947) c. 40, art. V, § 2, which
reads: "Parking Prohibited in Specified Places.    It shall
be unlawful for the operator of a vehicle to park such
vehicle at any time . . . (7) on the improved or paved sur-

face of any street after eleven o'clock P.M. for the purpose
of all night parking." He was fined $3. The case was
heard on agreed facts. The appeal is in conformity with
G. L. (Ter. Ed.) c. 278, § 28. See *Commonwealth* v. *Cer-
tain Gaming Implements*, 313 Mass. 409, 411; *Common-
wealth* v. *Finnigan*, 326 Mass. 378.

The automobile of the defendant was parked on the
paved surface of Bartlett Avenue between 12 P.M. and 6 A.M.
in front of No. 183, which is a dwelling house owned and
occupied by him. There was no sign or other marking on
Bartlett Avenue prohibiting all night parking or parking
after 11 P.M.

One contention of the defendant is that statutory author-
ity for the ordinance does not exist. The position of the
Commonwealth is that the ordinance is authorized by G. L.
c. 40, § 22[1] (as amended through St. 1957, c. 417, § 1).[2] This
provides, with exceptions which no one argues are material,
that "a city or town may make ordinances or by-laws . . .
for the regulation of carriages and vehicles used therein."
This statute "is of long standing, its predecessors having
been enacted many years before motor vehicles came into
use." *M & M Transp. Co.* v. *Wellesley*, 333 Mass. 11, 13.
Section 22 contains a second paragraph added and revised
by amendments (see St. 1949, c. 644, § 1; St. 1955, c. 458,
§ 1; St. 1957, c. 417, § 1) exempting disabled veterans and
handicapped persons from parking penalties.

The position of the defendant is that the ordinance, while
arguably within the broad delegation of c. 40, § 22, has been

---

[1] General Laws c. 40, § 22, in the first paragraph provides: Except as other-
wise provided in section eighteen of chapter ninety and subject, so far as
applicable, to section two of chapter eighty-five and sections eight and nine
of chapter eighty-nine, a city or town may make ordinances or by-laws, or
the board of aldermen or the selectmen may make rules and orders, for the
regulation of carriages and vehicles used therein, with penalties for the viola-
tion thereof not exceeding twenty dollars for each offence . . . .. Such rules
and orders shall not take effect until they have been published at least once in
a newspaper published in the city, town or county."

[2] The second paragraph of § 22 as amended is: "No penalty shall be im-
posed upon any disabled veteran or handicapped person, whose vehicle bears
the distinctive number plates authorized by section two of chapter ninety, for
parking such vehicle on any way for a longer period of time than permitted
by said ordinances, by-laws, rules or orders."

cut down in scope by G. L. c. 40, § 21 (21), which was added by St. 1956, c. 509, authorizing towns and cities (G. L. c. 40, § 1) to enact by-laws and ordinances "For prohibiting or regulating the parking of any motor vehicle in front of any dwelling house except by the occupants of said dwelling house, provided that notice of said prohibition or regulation is given by the use of portable or permanent signs."

We think that § 22 does authorize municipalities to regulate parking. See *Commonwealth* v. *Rice,* 261 Mass. 340, 344; *Opinion of the Justices,* 297 Mass. 559, 563–564; *Leveillee* v. *Wright,* 300 Mass. 382, 386–387. The exemptions in its second paragraph show that the Legislature has so intended.

There is then the question whether an ordinance, which was authorized at the time of enactment in 1947, ceased to be to some extent effective in 1956 by reason of the introduction of cl. 21 in c. 40, § 21, which allegedly contains an implied limitation upon the broad delegation in § 22. Statute 1956, c. 509, is entitled, "An Act authorizing cities and towns to enact certain parking regulations." We cannot believe that the Legislature intended sub silentio to affect an enabling statute (§ 22) which had its origin more than a century earlier in St. 1847, c. 224, §§ 1, 2, and in accordance with which many ordinances and by-laws must have been passed. A holding that there was such a legislative intent would give occupants of dwelling houses, as to the area in front of their dwellings, an immunity from regulations designed to promote the free flow of traffic or safe driving conditions, or to preserve access to fire apparatus (see § 21 [14], as amended by St. 1961, c. 383), ambulances, and similar vehicles, or to enable snow removal (see § 21 [16]; § 22D, inserted by St. 1961, c. 322). To state an example, a prohibition against parking on one side of a narrow street could not be enforced against the occupants of dwellings on the prohibited side.

. We confess that we can observe no need for the enactment of St. 1956, c. 509. Compare *Vigoda* v. *Barton,* 338 Mass. 302, 304–305. The composite effect of the statutes

seems to be that a city can now enact an ordinance pursuant to either § 22, or § 21 (21).

The defendant urges that the ordinance is an "unreasonable exercise of [the] police power" delegated by § 22. The power to regulate the use of public ways which has been delegated to municipalities is not unlimited. See *Commonwealth* v. *Surridge*, 265 Mass. 425, 428; *Commonwealth* v. *Wolbarst*, 319 Mass. 291, 293; *Commonwealth* v. *Carpenter*, 325 Mass. 519. Nevertheless every presumption is to be indulged in favor of the validity of such regulations. *Concord* v. *Attorney Gen.* 336 Mass. 17, 25. *Brown* v. *Carlisle*, 336 Mass. 147, 148. The record contains nothing to overcome the presumption of validity. There was nothing to show that the ordinance had no relation, for example, to the promotion of the free flow of traffic, or to snow removal, or to street cleaning. " 'The power to regulate the use of the streets of a city implies the power to prohibit the use of them under certain circumstances.' *Attorney General* v. *Boston*, 142 Mass. 200, 203, quoted in *Burgess* v. *Mayor & Aldermen of Brockton*, 235 Mass. 95, 102." *Commonwealth* v. *Kimball*, 299 Mass. 353, 358. Cities have a wide discretion as to what is reasonable in particular situations. *Commonwealth* v. *Sargent*, 330 Mass. 690, 692.

A final contention of the defendant is that the ordinance is too vague and indefinite to be enforced. His argument really comes down to a claim of invalidity because a bracket of exact hours is not given. We think that "all night parking" is definite enough to be understood.

                                         *Judgment affirmed.*