CITY OF MEDFORD *vs.* VINCENZA DiFILIPPO & another.

Middlesex.   March 2, 1964. — April 14, 1964.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, CUTTER, & REARDON, JJ.

*Subdivision Control.   Way,* Private:   way approved under subdivision control law, obstruction.

In a suit in equity by a city against persons who had applied for approval by its planning board of a subdivision plan of land showing a proposed way having a "dead end with a turnaround," evidence justified conclusions that the plan had been approved by action of the board under the subdivision control law even though the approval had not been indorsed on the plan as required by G. L. c. 41, § 81V, that the defendants had agreed that the way, including the turnaround, should be "an open way . . . not . . . permanently or even temporarily closed to [lawful] traffic," and that it had been made available for all reasonable travel and municipal and utility use in connection with the subdivision.   [329]

Owners of the only house and all the land on a turnabout at a dead
end of a private way in a subdivision approved by the planning board
of a city under the subdivision control law and made available for all
reasonable travel and municipal and utility use in connection with the
subdivision were not entitled to construct and maintain across the
entrance to the turnaround a fence and gate impeding such use even
though the fence and gate were intended to keep out trespassers and
prevent snow from the way being piled on the owners' land.   [329–330]

BILL IN EQUITY filed in the Superior Court on February
21, 1962.

The suit was heard by *Dewing, J.*

The case was submitted on briefs.

*Alfred P. Farese* for the defendants.

*Mark E. Gallagher, Jr.,* City Solicitor, for the plaintiff.

CUTTER, J.   The defendants on March 31, 1954, applied
to the Medford planning board for approval of a subdivi-
sion plan.   In their signed application was included the
statement, "The . . . owners . . . do hereby adopt the sub-
division plat attached hereto . . . and do hereby offer to
dedicate the streets, ways, . . . and other improvements
. . . as shown therein and as required by the [planning
board's] regulations to public use."   They listed as the
item covered by the dedication, "portion of street con-
structed by us."   After a hearing under G. L. c. 41, § 81T
(inserted by St. 1953, c. 674, § 7), the planning board voted
to approve the application subject to various requirements.
An agreement embodying these requirements was then exe-
cuted by the planning board and the defendants.   The re-
quired way was constructed.

The lots in the subdivision were adjacent to the proposed
way, Navarro Circle, which "is a . . . dead end with a turn
around or cul-de-sac, and the land on both sides as well as
that surrounding the cul-de-sac is owned by the" defend-
ants.   They applied for permits to build upon three of their
lots.   Permits were refused because, at some time prior to
February 21, 1962, the defendants had "caused to be con-
structed a heavy wire fence . . . across the . . . entrance
to the turn around with double gates across the way for
vehicular traffic and single gates on the sidewalks.   A sign

was affixed to the fence 'Private Property No Trespassing.' '' Photographs show that the vehicle gate was substantially narrower than the traveled portion of the way.

The city brought this bill in equity to obtain removal of the gate and fence. The trial judge made findings and an order for a decree, as a consequence of which a final decree directed removal of "a fence and gate . . . presently located on any part of the way dedicated to public use . . . known as Navarro Circle" and enjoined erection of a fence or gate or both. The defendants appealed. The evidence is reported.

We need not decide the precise effect of the agreement with the planning board (see G. L. c. 41, § 81Q, as amended) or whether the application to the planning board and its approval of the subdivision plan constituted an accepted, formal dedication of Navarro Circle to all public use. See *Loriol* v. *Keene,* 343 Mass. 358, 360. Although the members of the planning board had not indorsed their approval on the subdivision plan (see G. L. c. 41, § 81V, inserted by St. 1953, c. 674, § 7), the evidence clearly justified the conclusions that the subdivision plan had been approved and that the applicants had agreed that Navarro Circle was to be "an open way . . . not contemplated to be permanently or even temporarily closed to traffic that desired to . . . use the way" lawfully. Navarro Circle was thus made available at least for all reasonable travel and municipal and utility use in connection with, and for access to, the houses in the subdivision.

The defendants contend that, because their dwelling house is the only house now standing behind the fence (which was on Navarro Circle 200 feet from the public street), they are entitled to maintain the fence to keep out trespassers. There was testimony that the defendants experienced great inconvenience from the use of the turnaround in the early morning hours as a noisy "lovers' lane" and at other times for dangerous driving, that the police declined or failed to prevent such use, and that the city authorities intended to take snow from the way and pile it on the defendants' land.

There was also testimony that the fence interfered, or might interfere, with the proper plowing of the way by the city after snow storms and possibly with other municipal services (e.g. fire protection and collection of rubbish).

We assume that (1) the use of the way as a "lovers' lane" and for parking of automobiles unconnected with any use of the houses on the way, and (2) the unreasonable piling of snow on the defendants' land, may be enjoined as a trespass and a nuisance. See *Opinion of the Justices,* 297 Mass. 559, 564; *Loosian* v. *Goudreault,* 335 Mass. 253, 255– 256. Cf. *Commonwealth* v. *Dobbins,* 344 Mass. 272, 274– 275. Nevertheless, the circumstances which would require such relief do not warrant the defendants in constructing a fence which the trial judge, upon the evidence, justifiably found to impede unreasonably the orderly flow of traffic, the necessary plowing of snow, and the use of fire apparatus in an emergency. The defendants may not thus impede the access to the subdivision lots which the way was designed to afford.

*Final decree affirmed with
costs of appeal.*