COMMONWEALTH *vs.* GUY A. PETRALIA
(and three companion cases[1]).

Middlesex.    January 3, 1977. — April 29, 1977.

Present: HENNESSEY, C.J., QUIRICO, KAPLAN, WILKINS, & LIACOS, JJ.

*Practice, Civil,* Report.  *Constitutional Law,* Equal protection of laws.
   *Way,* Parking.  *Motor Vehicle,* Parking.  *Regulation.  Cambridge.*

Where three defendants filed motions to dismiss complaints charging
   them with violating parking regulations, and the judge reported
   questions of law without decision pursuant to G. L. c. 278, § 30A,
   the failure of two of the defendants to file briefs or join in the brief
   filed constituted a waiver of their right to rely on the contentions
   which prompted the judge's reported question. [454]
A  parking regulation which permitted only authorized residents of a
   city to park their automobiles on a public street in a congested area
   of the city did not unconstitutionally deny a nonresident equal pro-
   tection of the laws. [455-459]

COMPLAINTS received and sworn to in the Third District
Court of Eastern Middlesex on May 6, 1975.

On appeal to the Superior Court, motions to dismiss
were heard by *Scola, J.,* a District Court judge sitting
under statutory authority, and questions of law were re-
ported by him to the Appeals Court. The Supreme Judi-
cial Court, on its own initiative, ordered direct review.

*Guy A. Petralia,* pro se.

*Birge Albright,* Special Counsel, for the city of Cam-
bridge (*James Sahakian,* Assistant District Attorney, for
the Commonwealth, with him).

*Herbert P. Gleason,* Corporation Counsel *& Peter Koff,*

---

[1] Two of the companion cases are by the Commonwealth against Mr.
Allan A. Fishman and one is by the Commonwealth against Mr. Joseph
H. Porter. Mr. Petralia is the only defendant who has filed a brief
with this court. We shall refer to him as the defendant. All three are
members of the bar of the Commonwealth.

Assistant Corporation Counsel, for the city of Boston, submitted a brief.

*Charles Corkin, II, & Ellyn R. Weiss,* Assistant Attorneys General, for the Commonwealth, amicus curiae, submitted a brief.

WILKINS, J. The defendant, who has been charged with a parking violation in Cambridge, challenges the constitutionality of the regulation of the city's traffic director under which he was charged.[2] He challenges the regulation because it permits only authorized residents of Cambridge to park their automobiles on the public street where he, a nonresident, parked his automobile. We conclude that the classification made by the regulation bears a rational relation to proper legislative objectives.

The case is before us on a report which contains all the material facts. We transferred the case to this court on our own motion. Before considering the specific questions reported to us, we shall set forth the necessary background.

On May 6, 1975, a complaint issued charging the defendant with parking on Spring Street in East Cambridge, in a residential zone near the court house complex, in violation of a regulation of the traffic director. Spring Street was posted with signs reading "PARKING BY PERMIT ONLY EX SUN." The defendant had no permit and, as a nonresident of Cambridge, was not entitled to obtain one under the traffic director's "Rules and Regulations for the Resident Parking Sticker Program." A permit could be obtained by any resident of Cambridge for an automobile registered in Massachusetts, principally garaged in Cambridge, and owned or used by that resident.

On May 14, 1975, the defendant pleaded not guilty in the Third District Court of Eastern Middlesex. He was found guilty, fined $10, and appealed to the Superior Court. The defendant filed a motion to dismiss in the

---

[2] Statute 1961, c. 455, as amended through St. 1972, c. 340, authorizes the adoption of traffic regulations in Cambridge.

Superior Court, alleging various grounds for the motion.[3] Mr. Porter joined in the defendant's motion; Mr. Fishman filed a motion to dismiss which did not allege any grounds. The judge sitting in the Superior Court concluded that the motions raised "questions of law which are both doubtful and important" which required a decision of this court and reported the cases in pursuance of G. L. c. 278, § 30A.[4]

As to Mr. Porter and Mr. Fishman, we do not consider the questions reported because neither has filed a brief in this court nor joined in Mr. Petralia's brief. See Mass. R. A. P. 16 (j), 365 Mass. 860 (1974). Therefore, each has waived his right to rely on the contentions which prompted the judge's reported questions. *Carangias* v. *Market Men's Relief Ass'n*, 293 Mass. 284, 285 (1936). These defendants have no right to answers from this court, and it makes no difference that the judge reported the case without decision. *Soscia* v. *Soscia*, 310 Mass. 418, 422-423 (1941). See *Commonwealth* v. *Eppich*, 304 Mass. 678 (1939).

As to the defendant, we consider the questions reported, which are set forth in the margin,[5] only in so far as they

---

[3] The motion to dismiss alleged that the parking regulation was unconstitutional as (a) a denial of equal protection of the laws, (b) an interference "with the fundamental right of all people to travel uninhibited," (c) a denial to nonresidents of free and equal use of the public streets, (d) a denial to nonresidents of unrestricted access to the courts of Middlesex County in Cambridge, (e) a denial of the privileges and immunities of citizenship enjoyed by the residents of Cambridge, (f) being void for vagueness, (g) an interference with commerce, and (h) constituting an indirect tax on nonresidents for use of public streets.

[4] General Laws c. 278, § 30A, inserted by St. 1954, c. 528, provides for an interlocutory report in a criminal case of a question or questions of law which the judge regards "so important or doubtful as to require the decision of ... [this court] thereon before trial, in the interest of justice." The entire case is not to be reported but only so much of it as is "necessary to present the question of law." Although G. L. c. 278, § 30A, provides for reporting of such a question to this court, the report properly was entered initially in the Appeals Court. See G. L. c. 211A, § 10 (A).

[5] The judge stated that "[t]he questions requiring decision are as follows:

have been argued in his brief. The remaining questions need not be considered because, by not arguing them, the defendant has waived them as a basis for his motion to dismiss. Mass. R. A. P. 16 (a) (4), as amended, 367 Mass. 919 (1975). The only argument now made by the defendant is that the parking regulation discriminates against him as a nonresident in violation of his right to equal protection of the laws.[6]

The basic question is whether the classification made by the regulation rationally furthers a legitimate State purpose. *Opinion of the Justices*, 368 Mass. 857, 861 (1975). *Commonwealth* v. *Henry's Drywall Co.*, 366 Mass.

---

"a. Is Chapter 455, Acts of 1961, as amended by Chapter 340, Acts of 1972, constitutional?

"b. Is Chapter 455, Acts of 1961, as amended by Chapter 340, Acts of 1972, constitutional, as applied to these defendants?

"c. Is Chapter 455, Acts of 1961, as amended by Chapter 340, Acts of 1972, either on its face or as applied to these defendants, invalid for any reason stated in the Defendants' Motions to Dismiss?

"d. Are Cambridge Traffic Regulations implementing a resident-only parking system, adopted pursuant to Chapter 455, as amended by Chapter 340, Acts of 1972, constitutional as applied to the defendants?

"e. Should the Defendants' Motions to Dismiss be granted or should an order issue that the defendants be brought to trial forthwith, or should some other appropriate disposition be made?"

[6] The defendant does not challenge the regulation as exceeding the traffic director's statutory authority. Statute 1972, c. 340, amended cl. (*a*) of § 3 of St. 1961, c. 455, to authorize an exception from parking prohibitions in specified residential areas for certain vehicles of certain residents of Cambridge.

We are not presented with the question whether the regulation went beyond the statutory authorization by making stickers available to each resident of Cambridge owning or using an automobile principally garaged in Cambridge. The 1972 statutory amendment (St. 1972, c. 340) appears literally to authorize stickers only for persons residing in a specified residential area where parking is authorized by permit only. We have been advised that in 1974 a judge of the Third District Court of Eastern Middlesex ruled that a regulation which did not authorize all city residents to obtain a sticker discriminated impermissibly among Cambridge residents in violation of the equal protection clause of the Fourteenth Amendment to the United States Constitution. That judge indicated that a parking permit program available to all Cambridge residents would be valid. The traffic director apparently thereafter altered the parking sticker program to make stickers available to all residents of Cambridge who owned vehicles principally garaged in Cambridge.

539, 541-543, 544-546. *Pinnick* v. *Cleary,* 360 Mass. 1, 27-28 (1971). *New Orleans* v. *Dukes,* 427 U.S. 297, 303-304 (1976). *Belle Terre* v. *Boraas,* 416 U.S. 1, 8-9 (1974). Our analysis is no different because the challenged governmental action is based on a regulation, enacted pursuant to statutory authority, rather than based directly on a statute. See *Colella* v. *State Racing Comm'n,* 360 Mass. 152, 155-156 (1971); *Commonwealth* v. *Berney,* 353 Mass. 571, 574 (1968) (ordinance banning overnight parking); *Commonwealth* v. *Dobbins,* 344 Mass. 272, 275 (1962) (parking ordinance); *Commonwealth* v. *Sargent,* 330 Mass. 690, 692 (1953) (Boston parking regulation exempting only members and officers of the General Court upheld against an equal protection of the laws challenge). The defendant rightly concedes that the regulation of the use and operation of vehicles on public ways, including parking, is a legitimate subject of State concern. *Commonwealth* v. *Dobbins, supra* at 275, and cases cited. *Opinion of the Justices,* 297 Mass. 559, 563-564, 566 (1937). The Commonwealth's right to regulate vehicles stopping on a public way existed even before the invention of the motor vehicle. See *Commonwealth* v. *Rowe,* 141 Mass. 79, 80 (1886) (a cab); *Commonwealth* v. *Fenton,* 139 Mass. 195, 197 (1885) (a wagon). In addition, the reduction of traffic congestion and air pollution and the encouragement of the use of public transportation are legitimate State purposes. See *Radcliffe College* v. *Cambridge,* 350 Mass. 613, 617 & n.4 (1966); *Cabot* v. *Assessors of Boston,* 335 Mass. 53, 58, 64 (1956); *Lowell* v. *Boston,* 322 Mass. 709, 737 (1948); *Commonwealth* v. *Newhall,* 205 Mass. 344, 347-348 (1910); *South Terminal Corp.* v. *EPA,* 504 F.2d 646, 671-673 (1st Cir. 1974); *Friends of the Earth* v. *EPA,* 499 F.2d 1118, 1125 (2d Cir. 1974). See also Verbit, The Urban Transportation Problem, 124 U. Pa. L. Rev. 368, 390-397 (1975); Note, A Cure for the Highway Epidemic: A Balanced Subsidy, 5 Suffolk U.L. Rev. 902, 912-914 (1971).

The private motor vehicle, especially one occupied by only one person, often contributes unreasonably to congestion on the highways, to pollution of the environment,

and to the uneconomic expenditure of natural resources. The East Cambridge restricted parking area is within reasonable walking distance of the various court and other public facilities in East Cambridge. It is also within reasonable walking distance of the Lechmere Square subway station and of various bus stops of the Massachusetts Bay Transportation Authority. We take judicial notice that the court and other public facilities are accessible by public transportation and that the general vicinity in East Cambridge is developed substantially and intensely with commercial and industrial uses as well as with residential uses.

We think that a regulation which discourages persons from driving their automobiles to the congested neighborhood in the vicinity of the court house and other public facilities in East Cambridge deals rationally with the public interest in reducing highway congestion, in reducing air pollution, and in encouraging the use of public transportation in place of private transportation.

We turn then to the question whether the Cambridge parking regulation's distinction between Cambridge residents who have obtained parking permits and all others rationally furthers one or more of these legitimate State interests. The defendant relies on three opinions from other jurisdictions holding that parking restrictions which discriminated in particular ways between residents of an area and others were unconstitutional. *State* v. *Whisman,* 24 Ohio Misc. 59, 64-65 (C.P. Scioto County, 1970). *Cincinnati* v. *Cook,* 107 Ohio St. 223, 226-227 (1923). *Kaufman* v. *West,* 133 Wash. 192, 193 (1925). The *Whisman* case involved an ordinance whose purpose was limited to assuring parking rights to authorized residents of an area before others could park on public ways in that area. The court did not consider the broader purposes of the type which lie behind the Cambridge regulation. The *Cook* case was decided on the ground that there was an unconstitutional delegation to property owners of the right to determine who could park in front of their premises. The *Kaufman* case was decided on State constitutional grounds only, and concerned an ordinance which discriminated

against apartment house dwellers. The expressed purpose of the ordinance was a limited one. None of these opinions describes the character of the area where the parking restriction applied. These cases are inapplicable to the case before us, which involves a congested urban area which has had substantial traffic and parking problems for years.

The Supreme Court of Virginia recently struck down on equal protection grounds a local zoning ordinance which authorized residents of a defined zone, their guests, and invitees to park their motor vehicles in that zone but barred all others from parking there. *County Bd. of Arlington County* v. *Richards*, 217 Va. 645, 651 (1977). The ordinance's declared purposes were to protect the zone and its residents. Those purposes were not founded, if they could have been under State law, on the impact of nonresident parking on regional considerations, such as traffic congestion, air pollution, and the encouragement of the use of public transportation. The opinion accordingly gives no consideration to the possibility that a parking regulation, seemingly favoring residents of an area, might be justified on broader considerations than those expressed by the local board.

We conclude that the placing of motor vehicles of residents of Cambridge in a category apart from all other motor vehicles is not irrational. See *Opinion of the Justices*, 341 Mass. 760, 781 (1960). Those Cambridge residents most interested in parking in the restricted area are those who live in it. If they leave their cars parked near their homes, they contribute nothing to air pollution or to the congestion of moving traffic on the highways. In general, those Cambridge residents who do not live in the restricted area but are permitted to park in it have a shorter distance to travel and will contribute less to traffic congestion and pollution than will persons driving to the restricted area from other municipalities. Legislative classifications need not be perfect in order to survive a challenge on equal protection grounds. *Keough* v. *Director of the Div. of Employment Security*, 370 Mass. 1, 5-6 (1976).

*Opinion of the Justices,* 368 Mass. 831, 845 (1975). *Milton* v. *Civil Serv. Comm'n,* 365 Mass. 368, 377 (1974). *Dandridge* v. *Williams,* 397 U.S. 471, 485 (1970). The defendant has failed to meet his heavy burden of proving that the classification made by the Cambridge traffic director is invidiously discriminatory.[7]

The discrimination made by the Cambridge regulation is based rationally on the use or nonuse of a motor vehicle. A resident who parks near his home is not using his automobile, whereas a person who parks in an area away from his home has used his vehicle and thus has contributed to the problems which the Cambridge regulation seeks to address. The rational distinction made by the Cambridge regulation is founded on vehicle use. Place of residence is merely a reasonable means of measuring that use.

We answer question d, concerning the constitutionality of the regulation, in the affirmative, passing only on the constitutional issue argued by the defendant. Questions a, b, and c, all of which deal with the constitutionality of St. 1961, c. 455, as amended through St. 1972, c. 340, need not be answered because the defendant has not challenged the legislation as such. Question e asks what course the judge should follow. That question does not present a question of law, and we do not answer it. The report is dismissed as to the defendants Mr. Porter and Mr. Fishman. In the discretion of the judge, their motions to dismiss are to be treated as waived.

*So ordered.*

---

[7] We add that, if the regulation were constitutionally invalid for favoring residents of Cambridge who do not live in the East Cambridge restricted parking area in preference to nonresidents, the appropriate judicial remedy might be to deny parking rights to such residents of Cambridge as well as to the defendant. Such a solution would achieve the purpose of the regulation better than granting parking rights to everyone by striking down the regulation in its entirety.