CRAIG E. LYON & another[1] *vs.* JOANNE P. DUFFY.

No. 09-P-1821.

Plymouth. May 14, 2010. - September 29, 2010.

Present: DUFFLY, GRAHAM, & GRAINGER, JJ.

*Attorney at Law,* Negligence. *Negligence,* Attorney at law. *Real Property,* Mortgage, Certificate of title, Encumbrance. *Mortgage,* Real estate.

This court concluded that an order of conditions regarding a particular piece of property, which had expired with some work requirements uncompleted prior to transfer of that property, had no effect on the marketability of the title to that property, nor did it create a defect, lien, or encumbrance on the title. [865-867]

CIVIL ACTION commenced in the Superior Court Department on August 3, 2005.

Questions of law were reported to the Appeals Court by *Robert C. Rufo,* J.

*Brian J. Wall* for the plaintiffs.

*Terrance J. Hamilton (Andrew T. Imbriglio* with him) for the defendant.

GRAHAM, J. This is a case reported without decision to this court by the Superior Court upon request of the parties pursuant to Mass.R.Civ.P. 64(a), as amended, 423 Mass. 1403 (1996), for determination on an agreed statement of facts. See G. L. c. 231, § 111. The civil action out of which this report arises is essentially a negligence action by plaintiffs Craig E. Lyon and Mark J. Consolatti, purchasers of oceanfront property in Plymouth, against the title examiner, defendant Attorney Joanne P. Duffy.

The order reporting the case identified the following questions of law: (1) "[w]hether an expired order of conditions

---

[1]Mark J. Consolatti.

[OOC] affects title marketability"; (2) "[w]hether, other than the obligations imposed by G. L. c. 93, § 70,[2] an attorney representing a mortgagee owes any duty to a mortgagor"; and (3) "[w]hether the defendant certified good and sufficient record title to the premises."

1. *Facts.* The following summary is drawn from the agreed statement of material facts submitted by the parties. On or about August 13, 2004, Lyon executed a purchase and sale agreement (agreement) for the purchase of a single-family residence located in Plymouth on registered land. The agreement specified that, at the time for performance, Lyon (or his nominee) would be delivered "a good and sufficient" deed

---

[2]"In connection with the granting of any loan or credit to be secured by a purchase money first mortgage on real estate improved with a dwelling designed to be occupied by not more than four families and occupied or to be occupied in whole or in part by the mortgagor, an attorney acting for or on behalf of the mortgagee shall render a certification of title to the mortgaged premises to the mortgagor and to the mortgagee.

"For the purposes of this section, said certification shall include a title examination which covers a period of at least fifty years with the earliest instrument being a warranty or quitclaim deed which on its face does not suggest a defect in said title; provided, however, that in the case of registered land, it shall be sufficient to start the said examination with the present owner's certificate of title issued by the land court, except that bankruptcy indices and federal and state liens shall be examined. The term record title, as used herein, shall mean the records of the registry of deeds or registry district in which the mortgaged premises lie and relevant records of registries of probate.

"*The certification shall include a statement that at the time of recording the said mortgage, the mortgagor holds good and sufficient record title to the mortgaged premises free from all encumbrances, and shall enumerate exceptions thereto.* The certification shall further include a statement that the mortgagee holds a good and sufficient record first mortgage to the property, subject only to the matters excepted by said certification.

"The liability of any attorney rendering such certification shall be limited to the amount of the consideration shown on the deed with respect to the mortgagor, and shall be limited to the original principal amount secured by the mortgage with respect to the mortgagee. Said certification shall be effective for the benefit of the mortgagor so long as said mortgagor has title to the mortgaged premises, and shall be effective for the benefit of the mortgagee so long as the original debt secured by the mortgage remains unpaid.

"Willful failure by an attorney to render a certification to the mortgagor as required by the provisions of this section shall constitute an unfair or deceptive act or practice under the provisions of chapter ninety-three A." (Emphasis supplied.) G. L. c. 93, § 70, as amended through St. 1994, c. 350, § 3.

conveying "a good and clear record and marketable title . . . , free from encumbrances."

Lyon and Consolatti financed the purchase of the property through Wells Fargo Bank, N.A. (Wells Fargo), and were informed by Wells Fargo that Attorney Joanne Duffy had been selected to perform the closing and would act as the settlement agent. The closing occurred on September 16, 2004, at Duffy's office in Plymouth and title to the property was conveyed to Lyon and Consolatti. Duffy provided Lyon and Consolatti with customary closing documents, including a written certification stating in part that they held "good and sufficient record title . . . free from all encumbrances," subject only to those matters that were expressly excepted. The listed exceptions included easements and certain restrictions, but did not include any OOC.

Approximately six weeks after the closing, Lyon and Consolatti were contacted by the Plymouth conservation agent. Through communications with the conservation agent, they learned for the first time that their property was subject to an OOC issued by the Plymouth conservation commission (commission). The conservation agent contacted Lyon and Consolatti to ascertain whether certain work required by the OOC had been completed and all conditions of the permit had been satisfied. In particular, the conservation agent inquired whether the eighty-foot high and one-hundred-and-fifty-foot wide ocean-facing coastal bank on the property had been filled, graded, and re-vegetated in accordance with the conditions set forth in the OOC.

Since they had been unaware of the OOC, Lyon and Consolatti investigated the matter and learned that the subject OOC had been applied for on October 4, 2000, by a predecessor in title, George Rowe. The application was in the nature of a "Notice of Intent" filed by Rowe, who sought permission under the Wetlands Protection Act (G. L. c. 131, § 40) and the Plymouth wetlands protection by-law to construct a rock revetment, or seawall, at the bottom of the coastal bank situated on the property.

Plans submitted with the notice of intent show that the work proposed on the property was part of a larger project encompassing six abutting properties including the subject property, four properties to the north, and one property to the south. The

notice of intent proposed, among other things, the construction of the rock revetment and stabilization of the eighty-foot high bank situated above it with fill and plantings.

The commission approved the notice of intent and issued an OOC dated December 4, 2000, which specifically incorporated the aforesaid plans by reference and required that all work conform to the plans and conditions. The OOC also specifically provided that it was applicable to the owner and successors and assigns. The OOC and the incorporated plans contained detailed notes regarding the property owners' obligations to stabilize, fill, and re-vegetate the bank, including (a) filling the eroded portions of the bank with gravel; (b) covering the gravel with "geotextile fabric"; (c) covering the gravel and fabric with sand; and (d) re-vegetating the bank with beach grass planted twelve inches on center and rosa rogosa (beach plum) three feet on center.[3]

The OOC was recorded with the Plymouth registry district of the Land Court on March 4, 2003,[4] as document no. 528852 and is listed as an encumbrance on the memorandum of encumbrances appended to the transfer certificate of title of the

---

[3]Additionally, the OOC included the following other relevant provisions:

a. Failure to comply with all conditions set forth in the OOC was grounds to revoke or modify the OOC.

b. The work authorized by the OOC was required to be completed within three years unless extended upon application.

c. Prior to commencement of work, the OOC was required to be recorded with the Land Court "within the chain of title of the affected property."

d. Upon completion of the work described in the OOC, the applicant was required to "forthwith request in writing that a Certificate of Compliance be issued stating that the work has been satisfactorily completed."

e. The work was required to conform to the plans submitted with the notice of intent (plans). (The plans describe the stabilization work that was proposed and contain detailed notes that specify the grading, filling, and planting that was required as a condition of the project.)

f. The OOC is applicable to, and the responsibility of, the applicant, owner, their agent, successors or assignee.

g. Failure to comply with any conditions listed in the OOC, including but not limited to time limitations, installation of erosion control measures, recording of the OOC, and project construction, is deemed sufficient cause, unless adequate justification is provided, for the issuance of noncriminal citations under the Plymouth wetlands protection by-law.

[4]The delay in recording does not affect our analysis.

plaintiffs' predecessor in interest, the seller, Patricia O'Connor. The OOC is also listed on the memorandum of encumbrances appended to the plaintiffs' transfer certificate of title.

Three days before the closing, on September 13, 2004, O'Connor sent a letter to the commission with a filing fee of $50. O'Connor's letter was accompanied by a memorandum dated March 21, 2003, prepared by a professional land surveyor, which confirmed that the stone revetment was "constructed to the height required on design plans and [was] located above mean high water," but failed to confirm that all the work authorized and required by the OOC had been satisfactorily completed in accordance with the project plans.[5]

Nearly four months later, on January 12, 2005, the commission issued a partial certificate of compliance, which confirmed that the seawall had been installed in compliance with the OOC but also explicitly stated as follows:

> "It is hereby certified that only the following portions of work regulated by the [OOC] have been satisfactorily completed. The project areas or work subject to this partial certification that have been completed and are released from [the OOC] are: Construction of the stone revetment has been completed. Stabilization above the revetment, including fill and vegetation[,] has not been completed. The [OOC] has expired, therefore a new Notice of Intent must be filed for any further work."

To obtain a complete certificate of compliance, the plaintiffs must complete the bank stabilization work. However, the OOC's authorization to perform work on the coastal bank expired on December 4, 2003; thus, the plaintiffs would have to obtain a new OOC authorizing them to perform the stabilization work that was not performed under the original OOC. The cost to obtain a new permit and to perform the unfinished work under the OOC is estimated at approximately $100,000.

---

[5]Duffy testified in her deposition that she believed that O'Connor's letter with the land surveyor's memorandum was sufficient to obtain a certificate of compliance with regard to the OOC. She proceeded with the closing without first obtaining the certificate of compliance. Duffy anticipated that the commission would issue a certificate of compliance after the closing and that she would thereafter record it. Duffy held back $500 at the closing to ensure the recording of the certificate of compliance and to pay for the recording fee.

2. *Discussion.* The statute governing the relationship between mortgagors and attorneys acting on behalf of the mortgagee is G. L. c. 93, § 70, which provides, in relevant part, that "an attorney acting for or on behalf of the mortgagee shall render a certification of title to the mortgaged premises to the mortgagor and to the mortgagee. . . . The certification shall include a statement that at the time of recording the said mortgage, the mortgagor holds good and sufficient record title to the mortgaged premises free from all encumbrances, and shall enumerate exceptions thereto. The certification shall further include a statement that the mortgagee holds a good and sufficient record first mortgage to the property, subject only to the matters excepted by said certification." See, e.g., *Page* v. *Frazier*, 388 Mass. 55, 60-61 (1983).

Under this provision of the statute, the attorney for the lending institution must ensure that the mortgagor and mortgagee hold good and sufficient record title in the mortgaged property or, stated differently, that "the granting of a mortgage [has] vest[ed] title in the mortgagee to the land placed as security for the underlying debt." *Maglione* v. *BancBoston Mort. Corp.*, 29 Mass. App. Ct. 88, 90 (1990). Duffy provided a certification of title pursuant to § 70 stating that, upon recording of the mortgage, "the mortgagors hold good and sufficient record title to the mortgaged premises free from all encumbrances except said mortgage and further subject to the following matters which are specifically excluded from this certification of title: . . . 2. All applicable health, environmental and hazardous waste rules, regulations, laws and ordinances of the municipality, state and federal jurisdiction in which the premises [are] located; . . . ."[6]

The plaintiffs contend that the OOC, with uncompleted work requirements, constituted an encumbrance on the property, which Duffy did not list as an exception on the certification of title. Consequently, they argue, Duffy was negligent in failing to

---

[6]Duffy argues that assuming, arguendo, an expired order of conditions issued pursuant to G. L. c. 131, § 40, could be deemed an encumbrance, it was "excepted by said certification," in light of Duffy's enumeration of "[b]uilding and zoning laws for Plymouth and other governmental statutes and regulations which have not been examined . . . ." We need not address that issue since we conclude that an OOC is not an encumbrance to title.

discharge her duty to them under the statute.[7] We disagree. An encumbrance is a "legal obstruction to the purchaser to exercise that dominion over the land, to which the lawful owner is entitled." *Kellogg* v. *Ingersoll*, 2 Mass. 96, 101 (1806). The OOC, issued pursuant to G. L. c. 131, § 40, and the applicable regulations, is, in effect, a wetland permit that allows the property owner to perform work which, as at least one commentator has pointed out, may benefit the property when completed. See Eno & Hovey, Real Estate Law § 25.2, at 696 n.8 (2004).

"It is well established that building or zoning laws are not encumbrances or defects affecting title to property. . . . Such restrictions are concerned with the use of the land. . . . There is a difference between economic lack of marketability, which concerns conditions that affect the use of land, and title marketability, which relates to defects affecting legally recognized rights and incidents of ownership. . . . An individual can hold clear title to a parcel of land, although the same parcel is valueless or considered economically unmarketable because of some restriction or regulation on its use." *Somerset Sav. Bank* v. *Chicago Title Ins. Co.*, 420 Mass. 422, 428 (1995). Accordingly, we hold that the OOC, which is a regulation of the use of the plaintiffs' property, "is not a defect in or lien or encumbrance on the title and that it does not constitute unmarketability of title." *Chicago Title Ins. Co.* v. *Kumar*, 24 Mass. App. Ct. 53, 56 (1987).[8]

*Conclusion.* For the reasons set forth above, we answer the

---

[7]We note that the plaintiffs rely on no source of legal duty other than G. L. c. 93, § 70, for their negligence action.

[8]General Laws c. 131, § 40, requires that an OOC be recorded with the appropriate registry of deeds or Land Court registry district, like encumbrances such as liens, mortgages, and abstracts of judgment. The plaintiffs argue that because the statute prescribes not only a recording requirement but also a means to, in the plaintiffs' words, "clear title" (i.e., the certificate of compliance), it is apparent that "a duly recorded OOC without a corresponding [c]ertificate of [c]ompliance would put potential buyers on notice of a third party's rights, i.e., the [c]ommission, in the property.[] This procedure is similar to the recording of a mortgage and the filing of a subsequent discharge of mortgage. And since an OOC requires recording and a [c]ertificate of [c]ompliance to remove the impairment, the Court should determine that an OOC is an encumbrance within the meaning of G. L. c. 93, § 70." We are not persuaded. An OOC creates no property rights, while a mortgage does. See G. L. c. 260, § 35, inserted by St. 1957, c. 370 (defining a mortgage as a

first reported question, "No." The OOC, with unsatisfied conditions, has no effect on the marketability of the title, nor did it create a defect, lien, or encumbrance on the title. Our discussion resolves the basic issues of the case as presented to us, and we need not answer directly the remaining reported questions.[9] See *McStowe* v. *Bornstein*, 377 Mass. 804, 805 n.2 (1979); *Commonwealth* v. *Markvart*, 437 Mass. 331, 333 (2002); *Spellman* v. *Shawmut Woodworking & Supply, Inc.*, 445 Mass. 675, 679 (2006). The matter is remanded to the Superior Court for entry of judgment for Duffy.

*So ordered.*

---

"conveyance made for the purpose of securing performance of a debt or obligation"); *Murphy* v. *Charlestown Sav. Bank*, 380 Mass. 738, 747 (1980) (mortgage is a conveyance).

[9]As the plaintiffs have advanced no argument before us regarding the second reported question, we need not address it. See Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975). See also *Soscia* v. *Soscia*, 310 Mass. 418 (1941); *Commonwealth* v. *Petralia*, 372 Mass. 452, 454-455 (1977).